FILED DATE: 4/16/2019 5:10 PM   2019CH04870

FILED
4/16/2019 5:10 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04870
4716841

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

_____

_____ Plaintiff

v.

_____

_____ Defendant

No. ____2019CH04870_____

## CHANCERY DIVISION CIVIL COVER SHEET
## GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

0005 ❑ Administrative Review
0001 ❑ Class Action
0002 ❑ Declaratory Judgment
0004 ❑ Injunction

0007 ❑ General Chancery
0010 ❑ Accounting
0011 ❑ Arbitration
0012 ❑ Certiorari
0013 ❑ Dissolution of Corporation
0014 ❑ Dissolution of Partnership
0015 ❑ Equitable Lien
0016 ❑ Interpleader
0017 ❑ Mandamus
0018 ❑ Ne Exeat

0019 ❑ Partition
0020 ❑ Quiet Title
0021 ❑ Quo Warranto
0022 ❑ Redemption Rights
0023 ❑ Reformation of a Contract
0024 ❑ Rescission of a Contract
0025 ❑ Specific Performance
0026 ❑ Trust Construction
❑ Other (specify) _____

By: _____

❑ Atty. No.: _____   ❑ Pro se  99500

Name: _____

Atty. for: _____

Address: _____

City/State/Zip: _____

Telephone: _____

Primary Email: _____

Secondary Email: _____

Tertiary Email: _____

**Pro Se Only:** ❑ I have read and agree to the terms of the **Clerk's Office Electronic Notice Policy** and choose to opt in to electronic notice from the **Clerk's Office** for this case at this Email address:

_____

Hearing Date: 8/15/2019 9:30 AM - 9:30 AM
Courtroom Number: 2402
Location: District 1 Court
Cook County, IL

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Hearing Date: 8/15/2019 9:30 AM - 9:30 AM
Courtroom Number: 2402
Location: District Court
Cook County, IL

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| CITIZENS INSURANCE COMPANY OF AMERICA, INC., a Michigan corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | 2019CH04870 |
| MARSHALL SPIEGEL, CHICAGO TITLE TRUST CO, AS TRUSTEE OF TRUST NO. 8002351713, 1618 SHERIDAN ROAD CONDOMINIUM ASSOCIATION, an Illinois Not-For-Profit Corporation, JAMES WAITE, MARIE WAITE, WILLIAM MCCLINTIC, CORINNE MCCLINTIC, VALERIE HALL, DUANE MORRIS LLP, a Delaware Limited Liability Partnership, and MICHAEL KIM, | ) ) ) ) ) ) ) ) ) ) ) ) | FILED 4/16/2019 5:10 PM DOROTHY BROWN CIRCUIT CLERK COOK COUNTY, IL 2019CH04870 |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Citizens Insurance Company of America, plaintiff, for its Complaint for Declaratory Judgment against Marshall Spiegel, Chicago Title Trust Co., as Trustee of Trust No. 8002351713, 1618 Sheridan Road Condominium Association, an Illinois not-for-profit corporation, James Waite, Marie Waite, William McClintic, Corinne McClintic, Valerie Hall, Duane Morris LLP, a Delaware limited liability partnership, and Michael Kim, defendants, states:

### I.    INTRODUCTION

1.    This is a Complaint for a declaration of coverage under a Business Owners Insurance Policy, including a Business Owners Condominium, Co-Op, Association – Directors and Officers Liability Endorsement (the "D&O Endorsement"), issued by Citizens Insurance

FILED DATE: 4/16/2019 5:10 PM    2019CH04870

Company of America ("Citizens"), part of the "Hanover Insurance Group," to the 1618 Sheridan Road Condominium Association ("Association") for a September 3, 2015-16 policy period (the "Association Policy").

2.     Citizens seeks a declaration that it has no duty under the Association Policy to pay on behalf of Marshall Spiegel: (a) any of the *over $1.061 million* in Illinois Supreme Court Rule 137 sanctions awarded against him by orders entered by Judge Margaret Brennan on March 29, 2019 in favor of James and Marie Waite, William and Corrine McClintic, the Association, Valerie Hall, Duane Morris LLP (Ms. Hall's counsel), and Michael Kim (Association counsel), resulting from "Sanctions Petitions"—described in Paragraph 62 of this Complaint—filed in the "Consolidated Cases" known as, *1618 Sheridan Road Association v. Spiegel*, Circuit Court of Cook County, Illinois, Case no. 2015 CH 18825, *Marshall Spiegel v. Valerie Hall et al*, Circuit Court of Cook County, Illinois, Case no. 15 L 10817, and *Marshall Spiegel v. William McClintic et al.*, Circuit Court of Cook County, Illinois, Case no. 16 L 3564; or (b) any other sanction that may be awarded against him in connection with those Consolidated Cases, including any sanction for any appeal. All but $174,388.89 of the sanctions also were imposed jointly against Mr. Spiegel's personal and independent counsel in those Consolidated Cases, John Xydakis.

3.     In awarding those sanctions, Judge Brennan stated in her orders, among other things, that Mr. Spiegel and Mr. Xydakis had a "complete disregard for the judicial process through their egregious conduct," that their "actions … throughout this litigation and the consolidated cases [were] simply obscene and clear violations of Rule 137," that Mr. Spiegel had "engaged in a pattern of abuse, committed for an improper purpose to harass, delay and increase the cost of litigation," and that Mr. "Spiegel, enabled by his counsel, determinedly chose the tactic of abusive litigation." Mr. Spiegel and Mr. Xydakis, on information and belief, intend to

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

appeal the sanctions orders and sanctions-related orders.

4. Citizens has no duty to pay any of the Rule 137 sanctions on Mr. Spiegel's behalf, at least for the following reasons:

a. No Sanctions Petition is against Mr. Spiegel in his capacity as an "insured" as defined under the Liability coverage section of the Association Policy inasmuch as no Petition is against him (i) as an Association "'executive officer" or "director" "with respect to [his] duties as [one of the Association's] officers and directors" or (ii) as a "unit-owner … with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not owned solely by the unit-owner";

b. No Sanctions Petition is against Mr. Spiegel in his capacity as an "insured" as defined under the D&O Endorsement of the Association Policy inasmuch as no Petition is against him for any alleged "acts" by him "while acting in [his] capacity as members of the Board of Directors or while performing duties related to the conduct of [Association] business";

c. No "Sanctions Petitions" even qualifies as a "suit" against Mr. Spiegel, as is required for coverage, but each instead is merely a petition;

d. No Sanctions Petition is for "damages because of 'bodily injury', 'property damage' or 'personal and advertising injury'"—as those terms are defined under the Association Policy's Liability coverage section;

e. Rule 137 sanctions are not "damages" and, in any event, are uninsurable under Illinois law; and

f. Any Rule 137 sanction award that qualified as "damages" against Mr. Spiegel in

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

his capacity as an "insured" would, in any event, have fallen squarely within

exclusion l of the D&O Endorsement, as "'damages' arising out of any willful …

act, error or omission committed by the insured …."

5.      Citizens also seeks a declaration that it has no duty to post any appeal bond for

any of the Rule 137 sanctions because (a) no sanctions is covered, at least for the reasons stated

in Paragraph 4, and (b) there otherwise is no obligation under the Association Policy to post an

appeal bond, regardless of the circumstances.

6.      Citizens also seeks a declaration that: (a) at least for the reasons stated in

Paragraphs 2 through 4 of this Complaint, it also has no duty under the Association Policy to

defend Mr. Spiegel against the Sanctions Petitions, including no duty to fund any appeal of any

sanctions order or related orders; (b) for those same reasons, it has no duty under the Association

Policy to fund for Mr. Spiegel, the "Interlocutory Appeal" described in Paragraph 69 of this

Complaint or any other appeal relating to the Consolidated Cases; and (c) in a related vein, any

duty it had under the Association Policy to provide any funding relating the Consolidated Cases,

ended when the Association voluntarily dismissed its suit against Mr. Spiegel in Case no. 2015

CH 18825 on September 25, 2018, when there was no longer any suit against Mr. Spiegel in a

capacity as an "insured."

7.      Citizens also seeks a declaration that at least for the following reasons, it also has

no duty under the Association Policy to fund for the trustee of Mr. Spiegel's land trust, Chicago

Title Trust Co., as Trustee of Trust No. 8002351713 ("Trust 8002351713"),  the Interlocutory

Appeal or any appeal relating to the Consolidated Cases:

  a. The only suit naming Trust 8002351713 as a defendant was Case no. 2015 CH

   18825, brought by the Association against Mr. Spiegel, but which also sought

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

a declaratory judgment that would have been binding upon both Mr. Spiegel and Chicago Title, as trustee of the trust;

b.  The declaratory-judgment count in the Association's suit in Case no. 2015 CH 18825, sought declaratory relief against Chicago Title, as trustee of the trust, but not as an "insured" as defined under the Liability coverage section of the Association Policy: it was not against a "unit-owner … with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not owned solely by the unit-owner";

c.  The declaratory-judgment count in the Association's suit in Case no. 2015 CH 18825, sought declaratory relief against Chicago Title, as trustee of the trust, but also not as an "insured" as defined under D&O Endorsement of the Association Policy: there is no unit-owner coverage whatsoever under the D&O Endorsement;

d.  The declaratory-judgment count in the Association's suit in Case no. 2015 CH 18825, sought declaratory relief against Chicago Title, as trustee of the trust; it was not for "damages," let alone "damages because of 'bodily injury', 'property damage' or 'personal and advertising injury'"—as those terms are defined under the Association Policy's Liability coverage section; and

e.  On September 25, 2018, the Association voluntarily dismissed its declaratory-judgment count in Case no. 2015 CH 18825, seeking relief from Chicago Title as trustee of the trust; so, thereafter, there was no suit seeking any relief from the trustee.

8.    Citizens also seeks a declaration that it has no duty to pay, on Mr. Spiegel's

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

behalf, certain fees and expenses charged by his personal and independent counsel, Mr. Xydakis—namely, $42,569.86 deducted by Citizens from Mr. Xydakis's invoices for services from September 2017—July 2018, and all of the $52,702.70 in Xydakis charges for services from August 2018—September 25, 2018. None of those charges by Mr. Xydakis are covered under the Association Policy because none qualify as reasonable attorneys' fees and expenses incurred by Mr. Spiegel in defending the Association's suit against Mr. Spiegel in Case no. 2015 CH 18825, the only suit pending against Mr. Spiegel during that time, and the only reason why Citizens was then funding any of Mr. Spiegel's attorneys' fees and expenses.

9.    The $42,569.86 in Xydakis charges deducted for September 2017—July 2018 services, and at least part of the $52,702.70 in unpaid Xydakis charges for August 2018—September 25, 2018 services, relate to: (a) personal tort, contract, and declaratory-judgment counts Mr. Spiegel and his trust were attempting to allege against the Waites, the McClintics, the Association, Ms. Hall, Duane Morris and John Schriver and Mark Belongia of that firm, Mr. Kim, Mr. Spiegel's other unit-owner neighbors, Association property managers, and others, in two of the Consolidated Cases, Case nos. 15 L 10817 and 16 L 3564, rather than to any suit against Mr. Spiegel as an "insured;" (b) the related Sanctions Petitions, targeting Mr. Spiegel and Mr. Xydakis for alleged litigation misconduct in attempting to bring those personal claims; and (c) other uninsured matters, such as attending Association board meetings and handling Mr. Spiegel's  insurance claim under the Association Policy and representing Mr. Spiegel's trust. None of those charges by Mr. Xydakis, moreover, qualify as reasonable.

10.    The $52,702.70 in unpaid Xydakis charges for August 2018—September 25, 2018 also are for services that Citizens was paying another lawyer, Adrian Vuckovich, to provide Mr. Spiegel as his personal and independent counsel, after Mr. Xydakis had a conflict-of-interest

FILED DATE: 4/16/2019 5:10 PM    2019CH04870

or potential conflict resulting from the Sanctions Petitions targeting him and Mr. Spiegel, his client. During August 2018—September 25, 2018—and even before then—inasmuch as the initial Sanctions Petition was filed on May 9, 2018—Mr. Xydakis, on information and belief, was defending himself against the Sanctions Petitions. Having paid for Mr. Vuckovich's services, Citizens has no obligation to pay for services of a second lawyer, Mr. Xydakis—particularly one having a conflict or potential conflict due to Sanctions Petitions targeting both lawyer and client, in the circumstances described in this Complaint.

## II.    THE PARTIES

11.    Citizens is incorporated under Michigan law and has its principal place of business in Worcester, Massachusetts.

12.    Marshall Spiegel, on information and belief, is a resident of one of eight condominium units (the "Spiegel Unit") in a residential building located at 1618 Sheridan Road in Wilmette in Cook County, Illinois (the "1618 Sheridan Road Building") and also the beneficiary of a land trust that is the record owner of the Spiegel Unit.

13.    Chicago Title Trust Co., as Trustee of Trust No. 8002351713 ("Trust 8002351713"), on information and belief, is the trustee of the land trust for, and record owner of the Spiegel Unit.

14.    The 1618 Sheridan Road Condominium Association, on information and belief, is a not-for-profit corporation organized under Illinois law, has its principal place of business in Wilmette in Cook County, Illinois, and was organized under the Illinois Condominium Property Act for the unit owners of the 1618 Sheridan Road Building.

15.    James Waite, Marie Waite, William McClintic, Corrine McClintic, and Valerie Hall, on information and belief, also are owners or at least residents of condominium units located in the 1618 Sheridan Road Building.

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

16.     Duane Morris LLP is, on information and belief, a Delaware limited liability partnership, having law offices located in multiple cities including Chicago, Illinois.

17.     Michael Kim, on information and belief, is an attorney and resident of Chicago in Cook County, Illinois.

18.     To the extent Citizens seeks of a declaration that there is no coverage for the Sanctions Petitions, including any sanctions award, James and Marie Waite, William and Corrine McClintic, Valerie Hall, Duane Morris LLP, and Michael Kim, as Petitioners, are necessary parties to this Complaint.

### III.     JURISDICTION AND VENUE

19.     This Court, on information and belief, has jurisdiction under 735 ILCS § 5/2-209 over Marshall Spiegel, James Waite, Marie Waite, William McClintic, Corrine McClintic, Valerie Hall, Duane Morris LLP, and Michael Kim. This Court also has subject matter jurisdiction over this Complaint for Declaratory Judgment.

20.     On information and belief, venue lies in the Circuit Court of Cook County, Illinois, under 735 ILCS § 5/2-101.

### IV.     BACKGROUND

#### A.     ASSOCIATION INSURANCE POLICY

21.     A true and accurate copy of the Association Policy issued by Citizens to the Association for the September 3, 2015-16 policy period is attached as **Exhibit A**. The Association paid the premiums for the Association Policy.

22.     The Association Policy includes a "Property" coverage section which, subject to its terms, is applicable to the Association's "direct physical loss of or damage to Covered Property" and "Liability" coverage section, including the D&O Endorsement.

8

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

i.     THE ASSOCIATION POLICY'S LIABILITY COVERAGE SECTION

23.     The Association Policy's Liability coverage section, in the "Coverages" part,

provides:

**1. Business Liability**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages
because of "bodily injury", "property damage" or "personal and advertising injury" to
which this insurance applies. We will have the right and duty to defend the insured
against any "suit" seeking those damages. However, we will have no duty to defend
the insured against any "suit" seeking damages for "bodily injury", "property
damage" or "personal and advertising injury", to which this insurance does not apply.
We may at our discretion, investigate any "occurrence" and settle any claim or suit
that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D –
Liability and Medical Expenses Limit of Insurance** in **SECTION II –
LIABILITY;** and
**(2)** Our right and duty to defend end when we have used up the applicable limit of
insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered
unless explicitly provided for under Paragraph **f. Coverage Extension –
Supplementary Payments.**

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that
takes place in the "coverage territory";
**(b)** The "bodily injury" or "property damage" occurs during the policy period;
and
**(c)** Prior to the policy period, no insured listed under Paragraph **C.1. Who Is An
Insured** and no "employee" authorized by you to give or receive notice of an
"occurrence" or claim knew that the "bodily injury" or "property damage" had
occurred, in whole or in part….

**(2)** To "personal and advertising injury" caused by an offense arising out of your
[(meaning, the Association's)] business, but only if the offense was committed in
the "coverage territory" during the policy period.

24.     As for "insureds," the Association Policy's Liability coverage section provides

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

that the Association's "'executive officers' and directors are insureds, but only with respect to

their duties as [Association] officers and directors;" and that "'Executive officer' means a person

holding any of the officer positions created by [the Association] charter, constitution, by-laws or

any other similar governing document."

25.     The Association Policy's Liability coverage section, by endorsement, provides

further that "insureds" also include: "The developer in the developer's capacity as a unit-owner,

but only with respect to the developer's liability arising out of the ownership, maintenance or

repair of that portion of the premises which is not owned solely by the developer" (but not "to

liability for acts or omissions as a developer"); and "Each other unit-owner of the described

condominium, but only with respect to liability arising out of the ownership, maintenance or

repair of that portion of the premises which is not owned solely by the unit-owner."

26.     The Association Policy's Liability coverage section also includes the following

definitions:

- "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

- "Property damage" means [subject to an exception]: **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

- "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;
  **b.** Malicious prosecution;
  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

- "Suit" means a civil proceeding in which damages because of 'bodily injury', 'property damage', 'personal and advertising injury' to which this insurance applies are alleged. "Suit" includes: **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits without our consent.

27.     By endorsement, "Personal and advertising injury" as defined was modified to also include:

**h.** Discrimination or humiliation (unless insurance thereof is prohibited by law) that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

    **(1)** Not done intentionally by or at the direction of:

        **(a)** The insured; or

        **(b)** Any officer of the corporation, director, stockholder, partner or member of the insured; and

    **(2)** Not directly or indirectly related to an "employee", nor to the employment, prospective employment or termination of any person or persons by an insured.

28.     Although **Section II – Liability, F. Coverage Extension – Supplementary Payments**" of the Association Policy's Liability coverage section provides for payment of the "cost of bail bonds" and the "cost of bonds to release attachments," that payment obligation does not extend to the cost of appeal bonds, let alone posting them, even for a judgment on a covered claim.

        ii.      THE ASSOCIATION POLICY'S D&O ENDORSEMENT

29.     Subject to its terms, conditions, and limitations and those in the Association

11

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

Policy otherwise,  the D&O Endorsement provides, in part:

## A.  COVERAGE

**1.  Insuring Agreement**

For purposes of the coverage provided by this endorsement, **Section II – Liability A. Coverages** of the Businessowners Coverage Form is amended to add the following:

3.  Directors and Officers Liability

We will pay on behalf of the insured all sums which the insured becomes legally obligated to pay as "damages" because of a "wrongful act" to which this insurance applies.

We will have the right and duty to defend the insured against any "suit" seeking "damages" because of a "wrongful act" to which this insurance applies. However, we will have no duty to defend the insured against any "suit" seeking "damages" because of a "wrongful act" to which this insurance does not apply.

We may at our discretion investigate any "wrongful act" and settle any "claim" or "suit" that may result. But:

I.   The amount we will pay for "damages" is limited as described in the Declarations and **Section III – Limits of Insurance and Deductible**; and

II.  Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered under this endorsement unless explicitly provided for under **Section II – Liability, f. Coverage Extension – Supplementary Payments**.

***

30.    Coverage under the D&O Endorsement, however, is limited to certain "claims" first made against an "insured" during the September 3, 2015-16 policy period or "'claims' made or 'suits' brought against an insured and reported to" Citizens within a September 3, 2016-19 extended reporting period. For the claims made or suits brought during the 2016-19 extended reporting period, "[c]overage applies only with respect to any 'wrongful acts' that occurred

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

before the end of the [September 3, 2015-16] policy period"—so on or before September 3, 2016.

31.     As used in the D&O Endorsement, "insured" is limited to the Association's "past, present, or future officers, trustees, members of the Board of Directors, or 'employees' of the Board of Directors, but only for acts within the scope of their employment by [the Association], while acting in their capacity as members of the Board of Directors or while performing duties related to the conduct of [Association] business." In a related vein, "wrongful act" is limited to "any actual or alleged error, omission, misstatement, misleading statement, neglect, breach of duty, or act by the insured, or any matter claimed against the insured solely by reason of their serving in an insured position or capacity …."

32.     "Damages" under the D&O Endorsement are limited to "'economic loss for which an 'insured' is legally obligated to pay for any 'claim' to which this insurance applies and shall include judgments and settlements;" but not "fines or penalties imposed by law," "punitive damages," or any "other matters  . . . deemed uninsurable."

33.     As defined in the D&O Endorsement, "claim" means "any written demand presented for monetary 'damages' for a 'wrongful act' or a 'suit' against you arising from a 'wrongful act' to which this insurance applies."

34.     According to exclusion l of the D&O Endorsement, the "insurance does not apply to … 'damages' arising out of any willful …  act, error or omission committed by the insured …."

35.     Regarding defense under the D&O Endorsement, Citizens has "the right and duty to defend the insured against any 'suit' seeking 'damages' because of a 'wrongful act' to which this insurance applies;" but Citizens has no "duty to defend the insured against any 'suit' seeking

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

'damages' because of a 'wrongful act' to which this insurance does not apply."  Citizens under the D&O Endorsement also has "the right and duty to defend the insured against any 'suit' seeking non-monetary damages.'"

> B.  UNDERLYING LITIGATION – CASE NO. 15 L 10817 – MR. SPIEGEL AND TRUST 4179'S PERSONAL AND "DERIVATIVE" CLAIMS

36.  On or about October 26, 2015, Mr. Spiegel and Chicago Title and Trust Co, as Trustee of Trust No. 4179, the then mistakenly-alleged record owner of the Spiegel Unit, filed a complaint against Ms. Hall and the Association's alleged property manager, Keith Wood (copy, without exhibits, attached as **Exhibit B**), including counts (a) by Mr. Spiegel against Ms. Hall for alleged "defamation" and "false light," (b) by Mr. Spiegel and his Trust, "individually," and "derivatively" supposedly for the Association's benefit, for alleged breach of contract against Ms. Hall, and (c) by Mr. Spiegel, "individually," and "derivatively" supposedly for the Association's benefit, against Mr. Wood for alleged "intentional interference with business expectancy." Mr. Xydakis was counsel for Mr. Spiegel and his trust in the case.

37.  On or about October 30, 2015, Mr. Spiegel and Trust 4179, by Mr. Xydakis, filed a first amended complaint in Case No. 15 L 10817 (copy, without exhibits attached as **Exhibit C**), adding counts, (a) by Mr. Spiegel "derivatively on behalf of the Association" against Ms. Hall for declaratory relief, (b) by Mr. Spiegel against Ms. Hall for a declaration regarding whether Linda Moses could install hardwood floors in her condominium unit, (c) by Mr. Spiegel against Ms. Moses's alleged son-in-law, William Glastris, for alleged battery, and (d) by Mr. Spiegel against Ms. Moses for allegedly aiding and abetting Mr. Glastris's alleged battery.

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

C.      UNDERLYING LITIGATION – CASE NO. 15 L 10817 – HALL
        COUNTERCLAIM AGAINST MR. SPIEGEL

38.      On or about November 2, 2015, Valerie Hall filed a counterclaim against Mr.

Spiegel, in Case No. 15 L 10817 (copy, without exhibits, attached as **Exhibit D**), including

allegations that he breached his fiduciary duty to her at least by wrongfully assuming authority as

the Association's acting president.

D.      UNDERYLING LITIGATION – CASE NO. 15 L 101817 – MR.
        SPIEGEL AND TRUST 4179's AMENDED PERSONAL
        CLAIMS

39.      On November 24, 2015, Mr. Xydakis filed a second amended complaint in Case

No. 15 L 10817 for Mr. Spiegel and Trust 4179 against Ms. Hall, Mr. Wood, Ms. Moses, Mr.

Glastris, and James Waite. That second amended complaint (copy, without exhibits, attached as

**Exhibit E**) dropped allegations that Mr. Spiegel was purporting to bring claims "derivatively"

for the Association and added counts (a) by Mr. Spiegel against Mr. Waite for alleged "intrusion

upon seclusion" and "private nuisance" and (b) by Mr. Spiegel and Trust 4179 against Mr. Waite

for alleged breach of contract.

40.      On December 2, 2015, Mr. Xydakis also filed a "Counter & Third Party

Complaint" in Case No. 15 L 10817 (copy, without exhibits, attached as **Exhibit F**) for Mr.

Spiegel and Trust 4179 (a) against Ms. Hall, her husband, William Hall, and her counsel, Mark

Belongia and John Schriver of Duane Morris LLP for alleged intentional interference with

business expectancy, (b) against Duane Morris LLP under a "respondeat superior" liability

theory, and (c) against the Association's lawyer, Michael Kim, for alleged intentional

interference with business expectancy and "aiding and abetting" and "conspiracy" and "in

concert" for intentional interference with business expectancy.

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

41.     Then, on December 3, 2015, Mr. Xydakis filed a third amended complaint in Case No. 15 L 10817 (copy, without exhibits, attached as **Exhibit G**) for Mr. Spiegel and Trust 4179, adding counts by them against Mr. Waite for alleged breach of contract.

E.      UNDERLYING LITIGATION – CASE NO. 2015 CH 18825 – ASSOCIATION SUIT AGAINST MR. SPIEGEL AND TRUST 4179

42.     On or about December 31, 2015, the Association filed a complaint against Mr. Spiegel, Trust 4179, and First Bank and Trust of Evanston in Case no. 2015 CH 18825 (copy, without exhibits, attached as **Exhibit H**), for: (a) a declaration that (i) the Association's alleged Board of Directors was entitled to act as such, (ii) Mr. Spiegel was not an Association director, and (iii) certain of Mr. Spiegel's actions as "Acting President" were wrongful; (b) an injunction that would bar Mr. Spiegel from interfering with the Association's alleged Board of Directors and its actions; and (c) an injunction to unfreeze the Association's bank account at First Bank and Trust of Evanston. In March 2016, Mr. Spiegel filed a motion to dismiss the complaint against Trust 4179, relying in part on an affidavit indicating that rather than Trust 4179, the actual record owner of the Spiegel Unit was Trust 8002351713, which thereafter was added as party to the case, while Trust 4179 was dropped.

F.      MR. SPIEGEL'S DEFENSE OF HALL COUNTERCLAIM IN 15 L 10817 AND ASSOCIATION SUIT IN 2015 CH 18825 BY PERSONAL AND INDEPENDENT COUNSEL, MR. XYDAKIS

43.     Mr. Spiegel and Mr. Xydakis objected to having counsel appointed by Citizens to defend Ms. Hall's counterclaim against Mr. Spiegel in Case No. 15 L 10817. Citizens, thereafter, agreed that Mr. Xydakis could defend Mr. Spiegel against that counterclaim as his personal and independent counsel, with Citizens funding, subject to a reservation of rights.

44.     Citizens also agreed that Mr. Xydakis could defend Mr. Spiegel as his personal

FILED DATE: 4/16/2019 5:10 PM    2019CH04870

and independent counsel in Case no. 2015 CH 18825, with Citizens funding, subject to a reservation of rights. Mr. Xydakis also defended Trust 4179 in that case; and, after it was made a party, Trust 8002351713.

45.    Citizens had no obligation to fund attorneys' fees and expenses incurred by Mr. Spiegel or Trust 4179, Trust 8002351713, or any other trust for filing complaints, amended complaints, or "Counter & Third Party Complaints" in Case No. 15 L 10817, for pursuing personal tort, contract, and declaratory-relief claims against Mr. Waite, Ms. Hall, Duane Morris and Mr. Schriver and Mr. Belongia of that firm, Mr. Kim, other unit owners, property managers, or others. While Citizens had a duty to defend a suit against an "insured," it had no duty to pay for personal claims they brought against others.

46.    The status of Mr. Spiegel and any trust as an "insured" under the Policy, moreover, is limited by the Association Policy wording. Under the Association Policy's Liability coverage section, "insured" includes the Association's "'executive officers' and directors … with respect to their duties as [Association] officers and directors" and a "unit-owner of the described condominium [namely, the Association] … with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not owned solely by the unit-owner."

47.    For coverage under the D&O Endorsement, meanwhile, the definition of "insured" differs in that it includes a "past" Association director or officer, but "only for acts … while acting in [his] capacity as members of the [Association's] Board of Directors or while performing duties related to the conduct of [Association] business;" "insured" as defined under the D&O Endorsement does not include a unit-owner.

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

G.    UNDERLYING LITIGATION: JANUARY 14, 2016 TEMPORARY RESTRAINING ORDER IN CASE NO. 2015 CH 18825 – BARRING MR. SPIEGEL FROM ACTING FOR THE ASSOCATION OR ITS BOARD AND MORE

48.    On January 14, 2016, Judge Rita Novak granted the Association's January 11, 2016 motion for a temporary restraining order against Mr. Spiegel in 2015 CH 18825. According to the order (copy attached as **Exhibit I**):

> Defendant Marshall Spiegel and any person or persons acting in concert with him are enjoined from usurping or interfering with the powers of the 1618 Sheridan Road Condominium Association's Board of Directors, including (1) attempting to interfere with or terminate any of the association's service providers and vendors; (2) changing the names of the signatories on the association's Bank Accounts; (3) filing lawsuits on the Association's behalf; (4) issuing directives and communications which countermand decisions made by the current Board of Directors comprised of James Waite, Valerie Hall and William McClintic; (5) Issuing Directives and communications to unit owners, vendors or third parties that he (Spiegel) is "acting president" of the Association or holds any position of authority in the Association; (6) Issuing directives and communications which encourage or purport to mandate the unit owners or residents of the Condominium follow his instructions as to the Association or Condominium, and (7) otherwise purporting to act on behalf of the Board of Directors or the Association or to third parties.

49.    Although, on information and belief, Mr. Spiegel's personal and independent counsel, Mr. Xydakis, was present in the court room on January 14, 2016, when Judge Novak ruled on the Association's motion for temporary restraining order, he did not make any appearance for Mr. Spiegel or his trust in Case no. 2015 CH 18825 then, or any time before then. Then, on January 19, 2016, five days after Judge Novak entered the January 14, 2016 temporary restraining order referenced in Paragraph 48, Mr. Spiegel, represented by Mr. Xydakis, filed an application for leave to appeal that order with the First District.  But on February 4, 2016, the First District denied Mr. Spiegel's application. No reason was given. But, under Illinois Supreme Court Rule 307(d), a petition for appellate review of a temporary restraining order must be filed within two days of the order.

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

50.    On February 24, 2016, Judge Peter Flynn—who 2015 CH 18825 had been transferred to, upon Mr. Spiegel's motion—denied (without prejudice) Mr. Spiegel's motion to dissolve Judge Novak's January 14, 2016 temporary restraining order.  Mr. Spiegel did not file any petition for appellate review of that order.

51.    On June 22, 2016, Mr. Spiegel filed a "Motion & Suggestions for Supervisory Order Pursuant to Illinois Supreme Court Rule 383" to vacate Judge Novak's January 14, 2016 temporary restraining order. On July 21, 2016, the Illinois Supreme Court denied the motion.

H.    UNDERLYING LITIGATION: FEBRUARY 8, 2016 25-COUNT, 177-PARAGRAPH, FOURTH AMENDED COMPLAINT FILED BY MR. SPIEGEL IN CASE NO. 15 L 10817

52.    On February 8, 2016, Mr. Xydakis filed a 25-count, 177-paragraph fourth amended complaint for Mr. Spiegel in Case no. 15 L 10817 (copy, without exhibits, attached as **Exhibit J**). Mr. Spiegel's fourth amended complaint included counts against (a) Ms. Hall for alleged defamation and false light, (b) Ms. Hall and her husband, William Hall, for alleged intentional interference with business expectancy, (c) Ms. Hall's lawyers, Duane Morris LLP and Mr. Belongia and Mr. Schriver of that firm, for alleged intentional interference with business expectancy, (d) Mr. Waite, for alleged intrusion upon seclusion and private nuisance, (e) Ms. Hall, Mr. Waite, and Mr. McClintic, for alleged breach of contract, (f) Mr. Glastris for alleged battery, (g) Ms. Moses for alleged aiding and abetting Mr. Glastris's alleged battery, (h) Association "counsel," Mr. Kim, for alleged breach of fiduciary duty and intentional interference with business expectancy, and (i) the Association's alleged property manager, Keith Wood, for alleged breach of fiduciary duty and intentional interference with business expectancy.

FILED DATE: 4/16/2019 5:10 PM    2019CH04870

I.      UNDERLYING LITIGATION, CASE NO. 16 L 3564 BY MR. SPIEGEL AND
TRUST: APRIL 8, 2016 COMPLAINT; JUNE 3, 2016 33-COUNT, AMENDED
COMPLAINT, INCLUDING AGAINST PARTIES SUED BY THEM IN CASE
NO. 15 L 10817

53.      On April 8, 2016, Mr. Spiegel and his Trust 8002351713, by Mr. Xydakis, filed a

complaint against William and Corrine McClintic in Case No. 16 L 3564 (copy, without exhibits,

attached as **Exhibit K**), alleging a "private nuisance" relating to a supposed potential lease of

their condominium unit and seeking compensatory damages and a temporary and permanent

injunction enjoining them from renting their unit.

54.      On June 3, 2016, Mr. Spiegel and his Trust 8002351713, again by Mr. Xydakis,

filed a 33-count first amended complaint in Case No. 16 L 3564 (copy, without exhibits, attached

as **Exhibit L**), including counts against (a) the McClintics for declaratory relief, (b) Mr.

McClintic, Ms. Hall, Mr. Waite, and Mr. Kim for alleged intentional interference with business

expectancy, private nuisance, and intrusion upon seclusion, and under the Fair Housing Act, and

(c) Mr. McClintic, Ms. Hall, Mr. Waite, and Mr. Kim, and the Association for a declaratory

judgment.   When Mr. Spiegel and his trust filed their amended complaint, they already had

separate pending claims against Mr. Waite, Ms. Hall, and Mr. Kim in Case no. 15 L 10817.

J.      UNDERLYING LITIGATION: SEPTEMBER 28, 2016—FEBRUARY 9, 2018,
INCLUDING CONSOLIDATION OF CASES, WITHDRAWAL OF HALL
COUNTERCLAIM AGAINST MR. SPIEGEL IN 15 L 10817, DISMISSAL OF
MR. SPIEGEL'S 25-COUNT FOURTH AMENDED COMPLAINT IN 15 L
10817, AND DENIAL OF MOTION FOR LEAVE TO FILE 99-COUNT, 1436-
PARAGRAPH, 223-PAGE CONSOLIDATED COMPLAINT IN 15 L 10817
AND 16 L 3564

55.      On September 28, 2016, Case nos. 15 L 10817, 2015 CH 18825, and 16 L 3564

were consolidated and as Consolidated Cases were pending before Judge Moira Johnson.

56.      On December 14, 2016, Ms. Hall's counterclaim against Mr. Spiegel in Case no.

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

15 L 10817 was withdrawn. With no counterclaim against Mr. Spiegel, Citizens no longer had a duty to fund Mr. Spiegel's defense in that case.

57.     On June 14, 2017, Judge Johnson dismissed: (a) the fourth amended complaint of Mr. Spiegel in Case no. 15 L 10817—against the Halls, Duane Morris, Mr. Belongia, Mr. Schriver, Mr. Waite, Mr. McClintic, Ms. Moses, Mr. Glastris, Mr. Wood, and Mr. Kim; and (b) the amended complaint of Mr. Spiegel against the McClintics, Ms. Hall, Mr. Waite, Mr. Kim, and the Association in Case no. 16 L 3564. According to her order (copy attached as **Exhibit M**), Mr. Spiegel and his Trust 8002351713 would have to seek leave before filing another amended complaint.

58.     On August 15, 2017, Mr. Spiegel and Trust 8002351713 moved for leave to file a 99-count, 1,436-paragraph, 223-page, "Consolidated Complaint" for Case nos. 15 L 10817 and 16 L 3564. The Consolidated Complaint included one or more counts by Mr. Spiegel against (a) Ms. Hall for alleged defamation, false light, intentional interference with business expectancy, intrusion upon seclusion, private nuisance, and breach of fiduciary duty, and to remove her from the Association board, (b) Ms. Hall and her husband, William Hall, for declaratory relief and alleged breach of contract, (c) Mr. Hall for alleged intentional interference with business expectancy, (d) Duane Morris LLP and Mr. Belongia and Mr. Schriver of that firm, for alleged intentional interference with business expectancy, (e) Mr. Waite, for declaratory relief and alleged breach of contract, breach of fiduciary duty, intentional interference with business expectancy, intrusion upon seclusion, and private nuisance, and to remove him from the Association board, (f) the Waites for declaratory relief and alleged breach of contract, (f) Mr. McClintic, for declaratory relief and alleged breach of contract and breach of fiduciary duty, and to remove him from the Association board, (g) Corrine McClintic for alleged intentional

FILED DATE: 4/16/2019 5:10 PM    2019CH04870

interference with business expectancy, intrusion upon seclusion, and private nuisance, and (h) the Association for declaratory relief and alleged breach of contract, intentional interference with business expectancy, intrusion upon seclusion, and private nuisance, and to appoint a receiver and for dissolution.

59.     The Consolidated Complaint also included counts by Mr. Spiegel against (a) Mr. Glastris for alleged battery, (b) unit-owner Linda Moses for alleged aiding and abetting Mr. Glastris's alleged battery, (c) Association "counsel," Mr. Kim, for alleged breach of fiduciary duty and intentional interference with business expectancy, (d) Association "property manager," Keith Wood, for alleged breach of fiduciary duty and intentional interference with business expectancy, (e) Association "property manager," Richard Holtzman, for defamation and false light, and (f) "unit-owner" Danielle Rossini for declaratory relief and alleged breach of contract, based on her dog allegedly urinating and defecating on common area grass.

60.     The Consolidated Complaint also included three counts by Mr. Spiegel's son, Matthew—against Ms. Hall for alleged intentional interference with business expectancy, intrusion upon seclusion, and private nuisance. Mr. Xydakis also was Matthew's counsel.

61.     By order entered on February 8, 2018 (copy attached as **Exhibit N**), Judge Brennan, who the Consolidated Cases had been transferred to, denied Mr. Spiegel and his trust leave to file their 99-count, Consolidated Complaint. On July 11, 2018, Judge Brennan also denied their motion for reconsideration.

K.     RULE 137 SANCTIONS PETITIONS AGAINST MR. SPIEGEL AND MR. XYDAKIS, FOR ALLEGED LITIGATION MISCONDUCT IN THE CONSOLIDATED CASES; MR, SPIEGEL'S MOTION TO DISQUALIFY JUDGE BRENNAN

62.     Beginning just over three months after Judge Brennan entered her February 8, 2018 order denying Mr. Spiegel leave to file his 99-count Consolidated Complaint, "Sanctions

FILED DATE: 4/16/2019 5:10 PM    2019CH04870

Petitions," collectively seeking over $1 million, were filed under Illinois Supreme Court Rule 137 by targets of the complaints, amended complaints, counter & third party complaint, and proposed 99-count Consolidated Complaint, filed by Mr. Xydakis for Mr. Spiegel and his trust, as follows:

a. A sanctions petition and amended sanctions petition (copies, without exhibits, attached as **Exhibits O** and **P**) filed by Valerie Hall on May 9, 2018 and July 9, 2018, respectively, against Mr. Spiegel and Mr. Xydakis about alleged litigation misconduct in Case nos. 15 L 10817 and 16 L 3564;

b. A sanctions petition (copy, without exhibits, attached as **Exhibit Q**) filed by Duane Morris, LLP, on July 16, 2018 against Mr. Spiegel and Mr. Xydakis about alleged litigation misconduct in Case no. 15 L 10817 and 16 L 3564;

c. A sanctions petition (copy, without exhibits, attached as **Exhibit R**) filed jointly by the Association, James and Marie Waite, and William and Corrine McClintic on July 27, 2018 against Mr. Spiegel and Mr. Xydakis (i) for the Association, about alleged litigation misconduct in Case no. 2015 CH 18825 and (ii) for the Waites, the McClintics, and the Association, about alleged litigation misconduct in Case nos. 15 L 10817 and 16 L 3564; and

d. A sanctions petition (copy, without exhibits, attached as **Exhibit S**) filed by the Association's former counsel, Mr. Kim, on July 30, 2018 against Mr. Spiegel for alleged litigation misconduct in (i) Case no. 15 L 10817, (ii) moving to prevent Mr. Kim and the Association from proceeding with the Association's suit in Case no. 2015 CH 18825, and (iii) moving to disqualify Mr. Kim twice in Case no. 2015 CH 18825.

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

63.     After all of those Sanctions Petitions were filed, Mr. Spiegel and his trust, by Mr. Xydakis: (a) filed a motion to disqualify Judge Brennan "from further proceedings, or alternatively to disqualify her from any ruling related to the sanctions motions …;" (b) cross-petitioned for sanctions against the parties and their lawyers for filing the Sanctions Petitions; and (c) issued and served document and deposition subpoenas for discovery about the Sanctions Petitions, including to "The Hanover Insurance Group" and, on information and belief, counsel for the Waites, the McClintics, and the Association (the Murphy Law Group LLC), the Halls, Duane Morris and Mr. Schriver of that firm, Mr. Kim's law firm, Mr. Kim's defense counsel (Hinshaw), and Procyon Advisors LLP.

L.     MR. XYDAKIS'S CONFLICT-OF-INTEREST OR POTENTIAL CONFLICT AS A RESULT OF SANCTIONS PETITIONS; MR. VUCKOVICH AS PERSONAL AND INDEPENDENT COUNSEL FOR MR. SPIEGEL

64.     In August 2018, as a result of the conflict-of-interest or potential conflict arising from the Sanctions Petitions against Mr. Spiegel and Mr. Xydakis, Mr. Spiegel retained Adrian Vuckovich as personal and independent counsel to defend the Sanctions Petitions. Subject to a reservation of rights, Citizens agreed to pay reasonable and necessary attorneys' fees and expenses for Mr. Vuckovich to handle the Sanctions Petitions to the extent incurred by Mr. Spiegel in connection with defending the Association's suit against him in Case no. 2015 CH 18825, which was the only pending suit against Mr. Spiegel. The Sanctions Petitions, by Ms. Hall, Duane Morris LLP, the Waites, the McClintics, the Association, and at least in part by Mr. Kim, were about alleged litigation misconduct in Case nos. 15 L 10817 and 16 L 3564, in connection with personal tort, contract, and declaratory-judgment claims by Mr. Spiegel and his trust against them. And Mr. Spiegel retained Mr. Vuckovich as personal counsel to defend those Sanctions Petitions as well.

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

65.     By an August 24, 2018 letter to Mr. Vuckovich, Citizens' counsel stated that, "It's our understanding … that at least for now, Mr. Xydakis will continue to defend Mr. Spiegel against the Association Action [(Case no. 2015 CH 18825)]—but exclude himself from defending Mr. Spiegel against those motions as he'll be defending his own firm against at least the first three." But by then and even before then, the activity in Case no. 2015 CH 18825 related to the Sanctions Petitions alleging litigation misconduct by Mr. Spiegel and Mr. Xydakis in that case.

66.     Mr. Xydakis, moreover, was defending himself against the Sanctions Petitions. He had, on information and belief, tendered the defense of them to his professional liability insurer, Twin City Fire Insurance Company; but Twin City sued him in the United States District Court for the Northern District of Illinois, Case no. 18-CV-06387, for a declaration of no coverage and rescission based on alleged misrepresentations; and, as of the date of this Complaint, that lawsuit is pending.

M.      MOTIONS TO BAR RULE 137 SANCTIONS DISCOVERY

67.     The Halls, Duane Morris and Mr. Schriver, Hinshaw (for itself and Mr. Kim's firm), the Association, the Waites, and the McClintics moved to quash document and deposition subpoenas issued by Mr. Xydakis, for protective orders, or both, including the subpoenas served on "The Hanover Insurance Group"; and briefing including by Mr. Xydakis, followed thereafter.

N.      ASSOCIATION'S SEPTEMBER 25, 2018 VOLUNTARY DISMISSAL OF
        COMPLAINT IN 2015 CH 18825 AGAINST MR. SPIEGEL AND TRUSTEE
        OF HIS TRUST

68.     On September 25, 2018, the Association voluntarily dismissed its complaint in Case no. 2015 CH 18825 against Mr. Spiegel. And with Ms. Hall having withdrawn her

FILED DATE: 4/16/2019 5:10 PM    2019CH04870

counterclaim in Case no. 15 L 10817 against Mr. Spiegel in December 2016, none of the reasons

why Citizens originally funded Mr. Spiegel's defense in the Consolidated Cases existed

anymore. There was no longer any suit against Mr. Spiegel as an "insured" within the meaning

of the D&O Endorsement or otherwise; and no longer any suit seeking any declaratory or other

relief against Chicago Title, as trustee of Mr. Spiegel's Trust 8002351713.

    O.    JUDGE BRENNAN'S NOVEMBER 9, 2018 ORDERS DENYING
        SPIEGEL/TRUST MOTION TO DISQUALIFY HER AND NOVEMBER 8
        AND DECEMBER 7, 2018 XYDAKIS MOTION FOR SUBSTITUTION

69.    On November 9, 2018, Judge Brennan entered orders denying Mr. Spiegel's and

his trust's motion to disqualify her and on November 9 and December 7, 2018, she entered

orders denying Mr. Xydakis's motions for substitution of judge.

    P.    MARCH 8, 2019 TEMPORARY STAY OF CONSOLIDATED CASES;
        MARCH 16, 2019 "INTERLOCUTORY APPEAL" BY MR. SPIEGEL,
        HIS TRUST, AND MR. XYDAKIS

70.    On March 25, 2019, Mr. Spiegel, his trust, and Mr. Xydakis appealed a March 8,

2019 order by Judge Brennan in the Consolidated Cases that stayed until March 29, 2019, further

activity in them. In that appeal (First District, Appellate no. 1-19-0596), Mr. Spiegel, his trust,

and Mr. Xydakis, also challenged as "erroneous," earlier orders entered by Judge Brennan and

Judge Gregory Wojkowski in the Consolidated Cases, denying motions by Mr. Spiegel, his trust,

and Mr. Xydakis, to substitute a judge for Judge Brennan, disqualify her, and allow discovery

relating to supposed ex-parte communications between her and opposing counsel, including a

deposition of Judge Brennan.

    Q.    JUDGE BRENNAN'S MARCH 29, 2019 SANCTIONS ORDERS

71.    According to Judge Brennan's March 29, 2019, Rule 137 sanctions order—in

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

favor of the Association, the Waites, and the McClinitcs (copy attached as **Exhibit T**): "Spiegel and Xydakis have shown complete disregard for the judicial process through their egregious conduct;" "pleadings … and motions … are frivolous and unfounded;" and "claims … have no basis in law or fact." The order provides in addition that Mr. Spiegel and Mr. Xydakis "twisted existing case law," "misrepresented Illinois case law," and made "claims that are blatant lies," and "[e]ven though the claims are clearly unfounded, [they] have not dismissed their claims as Rule 137 requires." The order provides further that Mr. Spiegel and Mr. Xydakis "continued to pursue an unfounded lawsuit in this Court" and "attempted to pursue identical lawsuits in numerous other courts" "wast[ing] the parties'" and the "courts'" "time and resources;" their "actions … throughout this litigation and the consolidated cases are simply obscene and clear violations of Rule 137."

72.     According Judge Brennan's Rule 137 sanctions orders in favor of Ms. Hall and her counsel, Duane Morris LLP (attached as **Exhibit U**), and Association counsel, Michael Kim (attached as **Exhibit V**), "Spiegel has engaged in a pattern of abuse, committed for an improper purpose to harass, delay and increase the cost of litigation." The order provides in addition that "the Complaints filed were frivolous;" that Mr. "Spiegel, enabled by his counsel, determinedly chose the tactic of abusive litigation;" and that "[t]he mess that has typified [Mr.] Spiegel's pleadings, motions and briefs across the multiple lawsuits has been used to create confusion, evade decision, deceive the court and ultimately harass the litigants …."

## R.     CONTESTED XYDAKIS CHARGES

73.     Until January 2017, Mr. Xydakis submitted separate invoices for payment by Citizens, for Case no. 15 L 10817 involving the Hall Counterclaim against Mr. Spiegel and Case no. 2015 CH 18825, the Association's suit against Mr. Spiegel and his trust including, on

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

information and belief, in the case of the trust, without any allocation of any of his fees or expenses to the trust. For January 2017 services and thereafter, after Ms. Hall's counterclaim in Case No. 15 L 10817 against Mr. Spiegel was withdrawn, Mr. Xydakis submitted combined invoices for the Consolidated Cases. Those invoices included charges for all of Mr. Xydakis's services, whether for (a) Mr. Spiegel and his trust's attempted personal tort, breach of contract, and declaratory judgment claims in Case no. 15 L 10817 and 16 L 3564 against the Waites, the McClintics, the Association, Ms. Hall, Duane Morris and Mr. Schriver and Mr. Belongia of that firm, Mr. Kim, other unit owners, property managers, and others, (b) defense of Mr. Spiegel and the trust, in Case no. 2015 CH 18825, or (c) other uninsured matters, such as attending Association board meetings and services relating to about Mr. Spiegel's insurance claim under the Policy. Mr. Xydakis did not segregate charges that Citizens had no obligation to pay.

74.    For services from 2015 and thereafter, Citizens paid Mr. Xydakis $452,499.86, including at least $11,724.67 in overpayments. For September 2017—July 2018 services, Citizens paid $86,038.56 of the $116,883.75 in charges Mr. Xydakis submitted for payment. Citizens originally deducted $42,569.86 from those invoices, paying $74,313.89, but later mistakenly paid another $11,724.67. Citizens, on information and belief, has paid Mr. Xydakis even for services that Judge Brennan by her March 29, 2019 orders determined are subject to Rule 137 sanctions.

75.    Citizens, in addition, paid Mr. Vuckovich $88,864.36 for August 2018—January 31, 2019 services, after deducting $270; and paid, or is paying another $16,629.30 for February 2019 services, after deducting $4185 in uncovered fees and expenses. Citizens continued payments for Mr. Vuckovich's post-September 25, 2018 services after the Association voluntarily dismissed its complaint in Case no. 2015 CH 18825 against Mr. Spiegel,

FILED DATE: 4/16/2019 5:10 PM 2019CH04870

notwithstanding the absence of any obligation to do so and subject to a reservation of rights.

76.     For from August 2018—January 2019—when he had a conflict-of-interest, or potential conflict and was defending himself against the Sanctions Petitions—and when, as a result of the conflict or potential conflict, Mr. Vuckovich was defending Mr. Spiegel against the Sanctions Petitions—Mr. Xydakis submitted invoices for another $160,541.35 for Citizens to pay, including $108,838.65 for services after the Association's September 25, 2018 voluntary dismissal of its complaint in Case no. 2015 CH 18825, when there was no longer any suit against Mr. Spiegel as an "insured" to defend.

## V.     ACTUAL CONTROVERSY

77.     Citizens contends that, at least for the reasons stated in this Complaint:

    a.   It has no duty under the Association Policy to pay on behalf of Mr. Spiegel: (i) any of the *over $1.061 million* in Rule 137 sanctions awarded against him by orders entered by Judge Margaret Brennan on March 29, 2019 in favor of the Waites, the McClintics, the Association, Ms. Hall, Duane Morris LLP, and Mr. Kim, resulting from "Sanctions Petitions" in the Consolidated Cases;; or (ii) any other sanction that may be awarded against him in connection with those Consolidated Cases, including any sanction for any appeal;

    b.   It has no duty under the Association Policy to post any appeal bond for any Rule 137 sanctions award;

    c.   It has no duty under the Association Policy to defend Mr. Spiegel against the Sanctions Petitions, including no duty to fund any appeal of any sanctions order or related order;

    d.   It has no duty under the Association Policy to fund the Interlocutory Appeal described in Paragraph 70 of this Complaint for Mr. Spiegel or for his trust, or

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

any other appeal relating to the Consolidated Cases;

e.  Any duty Citizens had under the Association Policy to provide any funding for Mr. Spiegel relating to the Consolidated Cases ended when the Association voluntarily dismissed its suit against Mr. Spiegel in Case no. 2015 CH 18825 on September 25, 2018, when there was no longer any suit against Mr. Spiegel in a capacity as an "insured";

f.  It has no duty to pay, on Mr. Spiegel's behalf, $42,569.86 in charges it deducted from Mr. Xydakis's invoices for services from September 2017— July 2018; and

g.  It has no duty to pay, on Mr. Spiegel's behalf, any of the $52,702.70 in charges for Xydakis services from August 2018—September 25, 2018.

78.  Mr. Spiegel, Trust 8002351713, or both, on information and belief, disagree with Citizens regarding the absence of any duty, as described in Paragraph 77, for Citizens to (a) pay any sanction, (b) provide attorney-fee-and-expense funding for the Consolidated Cases and any related appeals, (c) pay the deducted Xydakis's charges for September 2017—July 2018, or (d) pay the unpaid Xydakis charges for August 2018—September 25, 2018. An actual controversy, thus, exists between Citizens, on one hand, and Mr. Spiegel and his trust, on the other, over whether Citizens has those duties. Citizens, therefore, seeks a judgment under 735 ILCS § 5/2-701 declaring that it has no such duties.

WHEREFORE, Citizens Insurance Company of America, plaintiff, requests that this Court enter judgment in its favor and against:

a.  Marshall Spiegel, defendant, and James and Marie Waite, William and Corinne McClintic, Valerie Hall, Duane Morris LLP, and Michael Kim, as additional

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

defendants and necessary parties, declaring that Citizens has no duty under the Association Policy to pay on behalf of Mr. Spiegel: (i) any of the *over $1.061 million* in Rule 137 sanctions awarded against Mr. Spiegel by orders entered by Judge Margaret Brennan on March 29, 2019 in favor of the Waites, the McClintics, the Association, Ms. Hall, Duane Morris LLP, and Mr. Kim, resulting from Sanctions Petitions in the Consolidated Cases; or (ii) any other sanction that may be awarded against Mr. Spiegel in connection with those Consolidated Cases, including any sanction for any appeal;

b.  Marshall Spiegel, defendant, declaring that:

   i.   Citizens has no duty under the Association Policy to post any appeal bond for any Rule 137 sanctions award against Mr. Spiegel;

   ii.  Citizens has no duty to defend Mr. Spiegel against the Sanctions Petitions, including no duty to fund any appeal of any sanctions order or related order;

   iii. Any duty Citizens had under the Association Policy to provide any funding relating to the Consolidated Cases ended when the Association voluntarily dismissed its suit against Mr. Spiegel in Case no. 2015 CH 18825 on September 25, 2018, when there was no longer any suit against Mr. Spiegel in a capacity as an "insured";

   iv.  Citizens has no duty to pay, on Mr. Spiegel's behalf, the $42,569.86 in charges it deducted from Mr. Xydakis's invoices for services from September 2017—July 2018;

   v.   Citizens has no duty to pay, on Mr. Spiegel's behalf, any of the

FILED DATE: 4/16/2019 5:10 PM   2019CH04870

$52,702.70 in unpaid charges in Mr. Xyadkis's invoices for services from August 2018—September 25, 2018;

c.   Marshall Spiegel and Chicago Title Trust Co., as Trustee of Trust No. 8002351713, defendants: (i) declaring that Citizens has no duty under the Association Policy to fund the Interlocutory Appeal for Mr. Spiegel or for that trust, or any other appeal for either of them relating to the Consolidated Cases; and (ii) awarding Citizens court costs and such other relief as is just in the circumstances; and

d.   All defendants, awarding Citizens such other relief as is just in the circumstances.

CITIZENS INSURANCE COMPANY OF AMERICA, INC.

 /s/ Christopher J. Graham
One of its attorneys

Christopher J. Graham
chrisg@joneslemon.com
Dawn C. Wrona Eby
dawne@joneslemon.com
Joseph P. Kelly
jkelly@joneslemon.com
Jones Lemon & Graham, LLP (Firm #34501)
328 S. Second St.
Geneva, Illinois  60134-0805
(630) 208-0805
(630) 208-4651 (fax)
Frim No: 34501