UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 20bk21625 |
| | ) | |
| Marshall Spiegel, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

MEMORANDUM DECISION

TIMOTHY A. BARNES, Judge.

Before the court is the Objection to Claim #2-1 of Wintrust Bank, N.A. [Dkt. No. 312] (the "Objection"), filed by the debtor, Marshall Spiegel ("Spiegel"), objecting to claim number 2-1 (the "Claim") of Wintrust Bank, N.A. ("Wintrust").  Spiegel objects to the Claim, arguing that Wintrust inappropriately honored a draw request on a letter of credit (the "Letter of Credit") issued by Wintrust on behalf of the applicant, Spiegel, in favor of Eugene E. Murphy, Jr. (the "Beneficiary") as attorney for several creditors who had obtained sanctions orders from the Circuit Court of Cook County.  While not challenging that the overall circumstances under which the Letter of Credit, as an appellate bond, should be drawn, Spiegel argues that Wintrust should be held to the standard of strict compliance with the terms of the Letter of Credit and, necessarily, that if such a standard is applicable, the court should hold that Wintrust's honor of the draw was inappropriate and that the Claim should be disallowed.

The Objection, however, fails at the most basic level to show how the Letter of Credit's own language should be interpreted as Spiegel suggests and not as Wintrust has done.  Further, Spiegel has failed to account for application of Illinois statutes, the state whose law governs the Letter of Credit, and the Letter of Credit's own terms.  Thus, even if Spiegel were successful in his strict compliance argument, Spiegel has failed to carry his burden to rebut the presumed allowance of the filed Claim.

Accordingly, for the reasons more fully explained in this Memorandum Opinion, the Objection will be OVERRULED.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").  28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b).  District courts may refer these cases to the bankruptcy judges for their districts.  28 U.S.C. § 157(a).  In accordance with section 157(a), the District Court for the Northern District of Illinois (the "District Court") has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the bankruptcy court may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1) & (c).  Absent consent, the bankruptcy judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter.  *Stern v. Marshall,* 564 U.S. 464 (2011).  Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter.  *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

The Objection seeks a determination by the court whether a claim should be allowed or disallowed pursuant to section 502 of the Bankruptcy Code.  Claims objections are core to the purpose and operation of bankruptcy law.  *Lesser v. Gray*, 236 U.S. 70, 74 (1915).  They are contested matters, Fed. R. Bankr. P. 9014,[1] and are expressly core proceedings, 28 U.S.C. § 157(b)(2)(B), that may arise only in a case under the Bankruptcy Code and necessarily stem from the bankruptcy case itself.  *In re Montalbano*, 486 B.R. 436, 438–39 (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing Lenior v. GE Capital Corp. (In re Lenior)*, 231 B.R. 662, 667 (Bankr. N.D. Ill. 1999) (Schmetterer, J.); *Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 693 (Bankr. N.D. Ill. 1999) (Schmetterer, J.)).  As a result, the resolution of claims objections is undoubtedly within the court's constitutional authority.  *Stern*, 564 U.S. at 499.

Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Objection.

PROCEDURAL HISTORY

This Memorandum Decision constitutes the court's final determination of the matters under advisement, unless expressly stated otherwise herein.  In reaching its conclusion, the court has reviewed the Claim, the Objection, Wintrust Bank's Response to Debtor's Objection to Claim [Dkt. No. 404] (the "Response") and the Reply in Support of Objection to Claim #2-1 of Wintrust Bank, N.A. [Dkt. No. 426] (the "Reply").  The court has also considered the arguments of the parties at the hearings held on October 25, 2021, and December 13, 2021.

---

[1]      The Federal Rules of Bankruptcy Procedure are referred to herein as the "Bankruptcy Rules," and, as to each, "Bankruptcy Rule ___").

As these items do not constitute an exhaustive list of the filings in this bankruptcy, the court has also taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n. 5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

Having conducted such review, this Memorandum Decision constitutes the court's determination of the Objection and the amount of the Claim.

BACKGROUND

The matter before the court involves a dispute over the Letter of Credit between the issuing bank, Wintrust, and the applicant, Spiegel. While the parties disagree over the applicable law and the propriety of Wintrust's actions, the parties do not dispute the material facts, which are as follows:

Prior to the filing of Spiegel's above-captioned bankruptcy case, Spiegel was involved in protracted and highly contentious state-court litigation against a variety of individual members of the condominium association governing his residence and their spouses.[2] That litigation, styled as *Spiegel v. Hall*, Case No. 15 L 10817 (the "Spiegel State Court Litigation")[3] in the Circuit Court of Cook County (the "Illinois Circuit Court"), was commenced in 2015 and appears to have continued to the present.

Much of the course of the State Court Litigation is set forth in the Order of the Illinois Appellate Court, First District (the "Illinois Appellate Court") dated December 3, 2020, attached as part of Exhibit A to Wintrust's Response and is not worth restating herein. Resp., Exh. A, pp. 7-37 (the "Appellate Court Order"). The Illinois Appellate Court does make clear, however, that on March 29, 2019, Cook County Circuit Court Judge Margaret A. Brennan granted sanctions in favor of the Sanctions Creditors against both Spiegel and his counsel, John Xydakis ("Xydakis"),[4] in an amount in excess of $1 million. Appellate Ct. Order, at ¶ 32. The sanctions were for "abusive litigation tactics of filing complaints filed with baseless accusations, misrepresenting case law by reversing or altering holdings, filing lawsuits for the sole purpose of harassment, increasing costs and delay, and filing objectively unreasonable motions to disqualify counsel and judges." *Id.* at ¶ 31.

As discussed below, the Letter of Credit appears to have been issued to satisfy the bond requirement of the Illinois Supreme Court regarding the staying of monetary judgments pending an appeal. In support of the Letter of Credit, Spiegel also provided a promissory note dated May 22,

---

[2]     James & Marie Waite, William & Corinne McClintic, Valerie Hall and Michael C. Kim (collectively, with the 1618 Sheridan Road Condominium Association and their counsel, Duane Morris LLP, the "Sanctions Creditors").

[3]     The actual caption of the State Court Litigation is difficult to determine, as it involved multiple lawsuits including some ostensibly commenced by Spiegel on behalf of the condominium association.

[4]     Though Spiegel argued to the Illinois Appellate Court that Xydakis was the "sole driver of [any] abusive litigation," Appellate Ct. Order, at ¶ 85, Spiegel continues to use the volunteer services of Xydakis in matters before this court.

2019, in the principal amount of $1,225,000.00 and an Assignment of Deposit Account (the "Assignment"), each of which were attached to the Claim.[5]

On appeal, the Illinois Appellate Court affirmed the Illinois Circuit Court in all respects, observing that the underlying litigation had a tortured history, but that Judge Brennan had a detailed grasp of the same. Appellate Ct. Order, at ¶ 75. The Illinois Appellate Court detailed the abuses by Spiegel and Xydakis, *e.g.*, *id.* at ¶ 79, and further observed that the same tactics that resulted in the sanctions had been repeated before it. *Id.* at ¶ 86.[6]

On December 11, 2020, eight days after the Illinois Appellate Court affirmed the Illinois Circuit Court, the Beneficiary drew on the Letter of Credit. Specifically, the Beneficiary presented a letter and certification from the Beneficiary, an attorney licensed to practice in the State of Illinois and made under penalty of law pursuant to section 1-109 of the Illinois Code of Civil Procedure, informing Wintrust that the Beneficiary intends to draw on the Letter of Credit, a sight draft directing Wintrust to pay the Beneficiary, a letter with (1) the Beneficiary's certification that the Debtor has failed to satisfy the judgments dated March 29, 2019, and (2) a copy of the Order/Opinion from the Illinois Appellate Court, which also included a link to the Illinois Appellate Court's website where the order was published, and a verification statement that the Beneficiary, under the penalty of perjury, believed the statements contained within the letter were true. Wintrust honored the presentation and made payment to the Beneficiary in the amount of $1,224,763.39.

On December 16, 2020, Spiegel commenced his chapter 11 bankruptcy proceedings by filing the above-captioned case. On February 10, 2021, Wintrust timely filed the Claim.

On September 8, 2021, Spiegel filed the Objection. In the Objection, Spiegel argues that Wintrust improperly honored the draw on the Letter of Credit when it accepted in apparent satisfaction of the Draw Condition 3(A) an allegedly non-certified copy of the Appellate Court Order. The crux of Spiegel's argument is that Wintrust was required to strictly comply with the Letter of Credit, and that Draw Condition 3(A) could only be satisfied by presenting a copy of an order/opinion certified by the Illinois Appellate Court. Notably, Spiegel challenges no other aspects of Wintrust's honor of the Letter of Credit draw and does not dispute that the Illinois Appellate

---

[5]   Both the Assignment and a separate assignment of collateral from Spiegel's son, Matthew Spiegel ("Matthew"), have been addressed in multiple ways in this case, including relief from stay requests from Wintrust and an adversary seeking to enjoin Wintrust from exercising its rights against Matthew. *See, e.g.*, *Spiegel v. Wintrust, N.A.*, Adv. Case No. 21ap00065. The court's denial of Spiegel's request therein is presently on appeal by Spiegel to the District Court.

[6]   The Illinois state courts are not the only courts to have remarked upon Spiegel's litigation tactics. At some point during the pendency of the State Court Litigation, Spiegel also sought remedies in the federal courts. The denial of the same resulted in an appeal by Spiegel to the Seventh Circuit, the ruling on which was made in March 2020. *Spiegel v. Kim*, 952 F.3d 844 (7th Cir. 2020). In *Kim*, in affirming the District Court's dismissal of Spiegel's attempt to characterize attorney's awards from the Illinois Circuit Court as an FDCPA violation, the Seventh Circuit remarked on the red-hot temperature of the parties and that "it is not lost on us that the state court rejected all of Spiegel's claims and reprimanded him for frivolous filings." *Id.* at 847. The Seventh Circuit also condoned the District Court's ability to take judicial notice of public records, including court filings, something the court here has also done. *Id.*

4

Court did in fact rule in such a way that, but for Spiegel's interpretation of Draw Condition 3(A), satisfied the parties' intent.[7]

On October 25, 2021, at the Objection's presentment hearing, the court set a briefing schedule and continued the matter for a hearing on the merits on December 13, 2021.

On November 15, 2021, in compliance with the court's established deadlines, Wintrust filed the Response arguing, *inter alia*, that Spiegel's reading of Draw Condition 3(A) leads to an impossible result because the Illinois Appellate Court does not certify copies of its orders or opinions and that the certification upon which they relied was sufficient. On November 29, 2021, also in compliance with the court's established deadlines, Spiegel filed the Reply, arguing that satisfaction of Draw Condition 3(A) was possible under his interpretation, as Wintrust could have requested a certified copy from the Illinois Circuit Court of the mandate following the appeal.[8]

The court conducted the continued hearing on the matter on December 13, 2021, at which hearing all parties appeared and were afforded an opportunity to argue. At the conclusion of that hearing, the court took the matter under advisement.

## THE LETTER OF CREDIT

A.    The Terms of the Letter of Credit

As noted above, the Letter of Credit was issued to satisfy the bond requirement of the Illinois Supreme Court, "in contemplation of an appeal that [Spiegel] filed" of the Illinois Circuit Court's sanctions orders. Resp., at ¶ 3; *see also* Ill. Sup. Ct. Rule 305(a) (Stay of Judgments Pending Appeal). It contained four draw conditions, as follows:

1. BENEFICIARY'S SIGNED DRAFT AT SIGHT DRAWN ON WINTRUST BANK, BEARING THE CLAUSE "DRAWN UNDER WINTRUST BANK LETTER OF CREDIT      DATED MAY 23, 2019."

2. BENEFICIARY'S SIGNED STATEMENT STATING:

(A). "I HEREBY CERTIFY THAT MARSHALL SPIEGEL HAS FAILED TO PERFORM TO SATISFY THE JUDGMENTS/ORDERS ENTERED ON MARCH 29, 2019 ("JUDGMENTS OR ORDERS") BY THE CIRCUIT COURT OF

---

[7]     Spiegel does not, for example, rely on the fact that on or around August 2021, the Illinois Appellate Court vacated the Appellate Court Order, dismissed the appeal declaring the sanctions orders not to be final and appealable orders and remanded the matter to the Illinois Circuit Court. Obj., at ¶ 7. When pressed on this issue, counsel to Spiegel articulated that the Objection is not based on that *vacatur*, but rather solely on the strict compliance with Draw Condition 3(A).

[8]     On December 6, 2021, Wintrust filed Wintrust Bank's Motion to Strike Portion of Debtor's Reply Based on Waiver, or in the Alternative, for Leave to File a Sur-Response, Instanter [Dkt. No. 432] (the "Motion to Strike"), arguing that the Debtor waived the mandate argument because he presented it for the first time in the Reply. While the court is aware that Spiegel's argument is not truly an extension of the original argument in the Objection but a new and different interpretation of Draw Condition 3(A), the court denied the Motion to Strike, *see* Order [Dkt. No. 440], concluding that Spiegel was entitled to reply to Wintrust's impossibility argument made in the Response.

5

COOK COURT OF ILLINOIS LAW DIVISION IN THE CASE OF 1618 NORTH SHERIDAN ROAD CONDOMINIUM ASSOCIATION AND MARSHALL SPEIFEL ET. AL V. VALERIE HALL ET. AL., 15-l-10817 (CONSOLIDATED WITH 15-CH-18825 AND 16-L-3564) (COLLECTIVELY "LAWSUIT") AND HAS FAILED TO PAY ALL ACTUAL DAMAGES INCURRED IN CONSEQUENCE OF THE SUSPENSION OR STAY OF THE COLLECTION OF THE JUDGMENTS/ORDERS;"

3.   COPIES OF EITHER (A) A CERTIFIED COPY OF AN ORDER/OPINION FROM THE APPELLATE COURT OF ILLINOIS FOR THE FIRST DISTRICT, AFFIRMING IN WHOLE OR IN PART THE JUDGMENTS/ORDERS ENTERED IN THE LAWSUIT (CONSOLIDATED WITH 15-CH-18825 AND 16-L-3564), OR DISMISSING THE APPEAL TOGETHER WITH A DATE OF CWERTIFICATION SIGNED BY THE BENEFICIARY, STATING THE AMOUNT OF THE UNSATISFIED JUDGMENT PLUS INTEREST AT 9% AS OF THE DATE OF THE CERTIFICATION.

OR

(B) A DATED CERTIFICATION SIGNED BY THE BENEFICIARY, STATING THAT: 1) THE LETTER OF CREDIT IS SET TO EXPIRE ON A DATE THAT IS TEN DAYS OR FEWER THAN THE DATE OF CERTIFICATION AND 2) THERE HAS BEEN NO DECISION OF THE APPELLATE COURT IN CONNECTION WITH THE CIRCUIT COURT DECISION ON THE CASE REFERENCE IN THE LETTER OF CREDIT, OR THERE HAS BEEN NO EXTENSION TO LETTER OF CREDIT NO. SB193800273 AND 3) THE AMOUNT OF THE UNSATISFIED JUDGMENT PLUS INTEREST AT 9% AS OF THE DATE OF THE CERTIFICATION AND

4.   THE ORIGINAL OF THIS LETTER OF CREDIT AND ALL AMENDMENTS, IF ANY.

Letter of Credit, at pp. 1–2 (the "Draw Conditions," and as to each, "Draw Condition ___").[9]

The Letter of Credit contains no apparent choice of venue or law provisions, but states that "THIS LETTER OF CREDIT IS SUBJECT TO AND GOVERNED BY THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS OF THE INTERNATIONAL CHAMBER OF COMMERCE (PUBLICATION 600)."[10]

---

[9]   Even a cursory review of the both the Draw Conditions and the rest of the Letter of Credit reveals that the Letter of Credit is replete with typographical errors, inconsistent terms and other errors.  Rather than attempt to note such errors with "[sic]" or other notations, the language of the Letter of Credit is set forth here in unannotated form.

[10]   The Uniform Customs and Practice for Documentary Credits of The International Chamber of Commerce (Publication 600) (the "UCP") provides that the rules outlined in the UCP are binding on all parties thereto when, as they are with the Letter of Credit, the text of the letter expressly indicates that it is subject to the UCP as it does here.  *See* UCP, Art. 1.

B.      Draw Condition 3(A)

The parties' dispute centers on Wintrust's alleged noncompliance with Draw Condition 3(A).

Draw Condition 3(A) is unquestionably imprecise.  It requires "A CERTIFIED COPY OF AN ORDER/OPINION FROM THE APPELLATE COURT OF ILLINOIS FOR THE FIRST DISTRICT."

Spiegel argues that Draw Condition 3(A) means a copy of the Appellate Court Order *certified by the Illinois Appellate Court* itself.  While that might make sense, that is not in fact what the Letter of Credit says.

The Letter of Credit, elsewhere, makes clear from whom a certification must be given.  *See, e.g.*, Draw Condition 2(A) (requiring a certification from the Beneficiary); Draw Condition 3(B) ("A DATED CERTIFICATION SIGNED BY THE BENEFICIARY …."). This shows that where the parties wanted a certification from a particular source, they knew how to require to the same.  It does, however, also show that when the parties specifically meant a certification from the Beneficiary, they stated as much.

At best, then, Draw Condition 3(A) implies a certification from sources named or sources not named (possibly including the Beneficiary), but not simply from the Beneficiary alone.

Wintrust seizes on this in the Response, arguing that the Beneficiary's certification that the Appellate Court Order satisfied the condition.  That, combined with the link to the opinion on the Illinois Appellate Court's docket, was more than sufficient to authorize the draw, it argues.  Thus Wintrust's honor of the Beneficiary's draw was appropriate.  Wintrust further states that the Illinois Appellate Court does not certify its opinions or orders.  Thus, Wintrust argues, Spiegel's reading of Draw Condition 3(A) creates a condition where performance is impossible.

In the Reply, rather than argue against Wintrust's contention that the Illinois Appellate Court does not certify its opinions or orders, Spiegel argues that certification could have come instead from the Illinois Circuit Court of the mandate entered there following the appeal.  That too, of course, is not what Draw Condition 3(A) states, and would only be possible if, as is noted above, Draw Condition 3(A) is not limited as to from whom a certification might be obtained.

DISCUSSION

A.      Standards and Burdens on Claims Objections

The matter before the court is a claims objection, yet Spiegel has done nothing in bringing the Objection to address the standards applicable to the same.  The court's determination, however, must focus first and foremost on those standards.

Section 502(a) of the Bankruptcy Code states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a).  As this court has stated,

> [a] proof of claim filed in accordance with 11 U.S.C. § 501 constitutes *prima facie* evidence of the validity and the amount of the claim. Fed. R. Bankr. P. 3001(f).

7

The party objecting to claim allowance carries the burden of rebutting the proof of claim. *In re Sentinel Mgmt. Group, Inc.,* 417 B.R. 542, 550 (Bankr. N.D. Ill. 2009) (Squires, J.); *In re J.S. II, L.L.C.,* 389 B.R. 563, 570 (Bankr. N.D. Ill. 2008) (Cox, J.); *In re Vastag,* 345 B.R. 882, 885 (Bankr N.D. Ill. 2006) (Schmetterer, J.).

*Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 704 (Bankr. N.D. Ill. 2014) (Barnes, J.).

As the objecting party here, Spiegel carries the initial burden to overcome the *prima facie* presumption, but Wintrust carries the ultimate burden of persuasion to show its entitlement to the Claim, including the amount of its Claim. Only once the objector has overcome the *prima facie* presumption does "the burden then shift[] back to the claimant to produce evidence to meet the objection and establish that the claim is in fact allowable." *In re O'Malley*, 252 B.R. 451, 455–56 (Bankr. N.D. Ill. 1999) (Schmetterer, J.). In that stage, the ultimate burden of persuasion always remains with the claimant to establish entitlement to its claim. *In re Kreisler*, 407 B.R. 321, 325 (Bankr. N.D. Ill. 2009) (Squires, J.).

To be clear, a claimant should only be required to meet an objection, *O'Malley*, 252 B.R. at 455–56, not prove its claim from the ground up. The deemed allowance in section 502(a) would apply to any aspect of the claim not challenged. 11 U.S.C. § 502(a). Thus, if a party objecting to a claim focuses only on one aspect of the claim, the claimant need only address that aspect.

"To rebut the presumption of validity of a claim, an objection must be premised on the grounds for disallowance set forth in section 502(b)." *Kaiser*, 525 B.R. at 704. Section 502(b) instructs the court to determine the amount of the Claim as of the date of the bankruptcy petition and to upset the presumed allowance of the Claim only if and only to the extent that one of nine enumerated grounds for disallowance exist. *See* 11 U.S.C. §§ 502(b)(1)–(9); *In re The Budd Co., Inc.*, 540 B.R. 353, 359–60 (Bankr. N.D. Ill. 2015) (Schmetterer, J.).

Section 502(b) is understood to stand for the proposition that "creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provision of the Bankruptcy Code." *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 20 (2000); *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 452 (2007) (recognizing that "claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed"); *In re Caesars Entm't Operating Co., Inc.*, 588 B.R. 32, 41 (Bankr. N.D. Ill. 2018) (Goldgar, J.) (*quoting Raleigh*).

Here, Spiegel challenges whether Wintrust's Claim is legally cognizable, but fails to mention section 502(b) let alone predicate his request under it. The court nonetheless affords Spiegel the benefit of the doubt and presumes his request is predicated under section 502(b)(1), as he appears to argue, without attribution, that the Claim is unenforceable against Spiegel. Obj., *infra*.

An inquiry into section 502(b)(1) necessitates an inquiry into the underlying substantive law. Here again, though Spiegel does himself a disservice. Spiegel's "strict compliance" argument is the only argument made, yet Spiegel does not even consider how such an argument plays out in the context of the terms of the Letter of Credit and Illinois law. He cites a single decision from the Seventh Circuit Court of Appeals, a select provision of the Illinois Commercial Code and several decisions outside the Seventh Circuit for the general proposition that the terms of letters of credit must be strictly complied with, but fails to connect those arguments legally to the law governing the

8

Letter of Credit here or this court.  He cites no other case law, statute or terms of the Letter of Credit to support his conclusion.[11]

This alone is enough for the Objection to be overruled.  *Heinold Commodities, Inc. v. Elliott*, Case No. 86 C 7963, 1987 WL 8977, at \*3 (N.D. Ill. Mar. 30, 1987) (denying a motion to dismiss that "offer[ed] next to nothing in the way of authority or analysis").  It is "not [the] court's responsibility to research and construct the parties' arguments" if they cannot be bothered to do so themselves.  *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) (internal quotation omitted).  As both the Seventh Circuit and the District Court have emphasized, "[j]udges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), "[n]or are they archaeologists searching for treasure."  *Jeralds ex rel. Jeralds v. Astrue*, 754 F.Supp.2d 984, 985 (N.D. Ill. 2010) (*citing DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)); *see also Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 805 F.Supp.2d 503, 508 (N.D. Ill. 2011) (summarizing the foregoing).

Assuming for the sake of argument that further inquiry is warranted (as such would be required for Spiegel to succeed on the Objection), inquiry into the law applicable to the Letter of Credit raises more questions than it answers.

B.    The Law Governing the Letter of Credit

To begin, Spiegel argues principles of law and cites to cases outside of this Circuit, but makes no effort to state or explain what law governs the Letter of Credit.  The Letter of Credit itself appears to be silent as to a choice of governing law.  "[W]hen a letter of credit is silent regarding choice of law, the law where the issuing bank is located governs the issuing bank's responsibility.  UCC § 5-116(b)."  *BM Elecs. Corps. v. LaSalle Bank, N.A.*, Case No. 04 C 5375, 2006 WL 760196, at \*3 (N.D. Ill. Mar. 22, 2006).  As Wintrust is an Illinois corporation, the branch where the Letter of Credit was obtained is in Illinois and the Letter of Credit lists only Illinois addresses for notices, the court must assume that Illinois law governs the Letter of Credit.

Under Illinois law, a letter of credit documents three separate contractual relationships. *Jupiter Orrington Corp. v. Zweifel*, 127 Ill. App. 3d 559, 562 (Ill. App. Ct. 1984) (*quoting Baker v. Nat'l Boulevard Bank of Chicago*, 399 F. Supp. 1021, 1024 (N.D. Ill. 1975)).  The first is between the beneficiary and the applicant, the second is between the applicant and the bank and the last is the between the bank and beneficiary.  *Id.*; *cf.* 810 ILCS 5/5-103(d).  "In construing the nature and terms of a letter of credit, the same general principles apply which govern other written contracts."  *Bank of N.C., N.A. v. Rock Island Bank*, 570 F.2d 202, 207 (7th Cir. 1978).  It is also subject to the Illinois adoption of Article 5 of the Uniform Commercial Code (the "UCC"), and those provisions govern over the more general contract interpretation principles when in conflict.  *Occidental Fire & Cas. Co. of N.C. v. Cont'l Ill. Nat. Bank & Tr. Co. of Chicago*, 718 F. Supp. 1364, 1368 (N.D. Ill. 1989).

Which UCC provisions govern, however, is not so straightforward.

Spiegel argues that applicable law requires Wintrust to strictly comply with the terms of the Letter of Credit.  In that, he is correct that the Seventh Circuit did in fact *assume* in *Banque Paribas v. Hamilton Indus. Int'l, Inc.*, 767 F.2d 380, 384 (7th Cir. 1985), that strict compliance was still in effect as

---

[11]    The Objection does refer to the Illinois Rules of Evidence to explain why copies of orders certified by courts have unique evidentiary value, but that has no application here.  *See* Ill. R. Evid. 902.

to letters of credit in Illinois. The Seventh Circuit made clear, however, when it was doing so that such assumption was merely that and that so assuming did not affect the outcome of their ruling. *Id.* The Seventh Circuit made no inquiry beyond that.[12]

Spiegel is also correct that the Illinois UCC does have a provision regarding letters of credit that flirts with the concept of strict compliance. It states that

> [e]xcept as otherwise provided in Section 5-109, an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection (e), *appears on its face strictly to comply* with the terms and conditions of the letter of credit. Except as otherwise provided in Section 5-113 and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not *appear so to comply.*

810 ILCS 5/5-108(a) (emphasis added).

As Spiegel observes, this provision makes reference to strict compliance. But as Spiegel fails to recognize and address, the statute qualifies the same based on "appearances." Requiring an issuer to honor a presentation that strictly complies with the terms and conditions of the letter of credit is not the same as requiring an issuer to honor a presentation that *appears to* strictly comply. The former is strict compliance. The latter is something less than that.

That Illinois requires something less than strict compliance has been noted by the District Court, where it stated that

> *First Arlington,* 90 Ill.App.3d at 814–15, 46 Ill. Dec. at 185, 413 N.E.2d at 1298 appeared to move away from the traditional doctrine of "strict compliance" to a more lenient standard of "reasonable compliance" because—as the Appellate Court said there—"insignificant variance between the letter of credit requirements and the documents submitted in compliance therewith is permissible" (see also this Court's opinion, following the lead of *First Arlington* in a diversity case, in *Crocker Commercial Services, Inc. v. Countryside Bank,* 538 F. Supp. 1360, 1362 (N.D. Ill. 1981)).

*Integrated Measurement Sys., Inc. v. Int'l Com. Bank of China,* 757 F. Supp. 938, 943 (N.D. Ill. 1991) (*citing First Arlington Nat. Bank v. Stathis,* 90 Ill. App. 3d 802, 814–15 (Ill. Ct. App. 1980)).

Even so, considering the application of this section may be premature for a reason that Spiegel also fails to consider—virtually every provision of the UCC is subject to change by agreement of the parties. Section 1-302 states that

> (a) Except as otherwise provided in subsection (b) or elsewhere in the Uniform Commercial Code, the effect of provisions of the Uniform Commercial Code may be varied by agreement.

---

[12]   Further, the ruling in *Banque Paribas* was in the context of insulating the bank from hyper technical criticism over a draw, quite the opposite of what Spiegel attempts to use it for here.

(b)  The obligations of good faith, diligence, reasonableness, and care prescribed by the Uniform Commercial Code may not be disclaimed by agreement. The parties, by agreement, may determine the standards by which the performance of those obligations is to be measured if those standards are not manifestly unreasonable.  Whenever the Uniform Commercial Code requires an action to be taken within a reasonable time, a time that is not manifestly unreasonable may be fixed by agreement.

(c)  The presence in certain provisions of the Uniform Commercial Code of the phrase "unless otherwise agreed", or words of similar import, does not imply that the effect of other provisions may not be varied by agreement under this Section.

810 ILCS 5/1-302.  The Objection fails to address this fact in any way.

Put another way, to successfully argue for strict enforcement, the party must first be clear as to what they wish to be strictly enforced and how.  Even if 810 ILCS 5/5-108(a) results in strict enforcement, what is to be strictly enforced is still a creature of contract law.  But Spiegel has not even given the court the most basic information it needed to see what the contract—the Letter of Credit—says.

Here, the Letter of Credit itself says that "THIS LETTER OF CREDIT IS SUBJECT TO AND GOVERNED BY THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS OF THE INTERNATIONAL CHAMBER OF COMMERCE (PUBLICATION 600)."

The UCP thus in the first instance governs the interpretation of Draw Condition 3(A). Illinois courts have applied the terms of the UCP when parties have chosen to be bound by it.  *See Mount Prospect State Bank v. Marine Midland Bank*, 121 Ill. App. 3d 295 (Ill. Ct. App. 1983).  The District Court has done the same.  *Atari, Inc. v. Harris Trust and Sav. Bank*, 599 F. Supp. 592, 600 (N.D. Ill.1984), *rev'd in part on other grounds sub nom. Racinowski v. Chrans,* 785 F.2d 312 (7th Cir. 1986).

Spiegel has not, however, made any reference to or provided a copy of the UCP.

The UCP was created by the International Chamber of Commerce to promote uniformity in the treatment of documentary credits and facilitate international business and trade.  *See generally,* Rubenstein, *The Issuer's Rights and Obligations Under a Letter of Credit,* 17 U.C.C.L.J. 129, 138 (1984).  It is, unfortunately, exceedingly difficult to obtain a copy of, and doing so was one of the reasons this Memorandum Decision took as long as it did to complete.

The UCP articulates that an issuer "must examine a presentation to determine, on the basis of the documents alone, whether or not the documents *appear on their fa*ce to constitute a complying presentation."  UCP, Art. 14(a) (emphasis added).  It further makes clear that an issuer's acceptance of a draw is based on the issuer's subjective belief that the draw complies with the terms or conditions of the Letter of Credit.  *See* UCP, Art. 15(a) ("When an issuing bank determines that a presentation is complying, it must honor"); UCP, Art. 16(a) ("When …the issuing bank determines that a presentation does not comply it may refuse to honor or negotiate.").

Taken together, these provisions of the UCP make clear that, at least as to an Illinois letter of credit governed by the UCP, Spiegel's strict compliance argument fails.  What is important for a

11

bank to honor a draw is not whether the draw strictly complies, but whether the bank determines that the draw appears on its face to comply.

Was Wintrust's honor of the draw on the Letter of Credit reasonable under these conditions? The court finds that it was.

First, the language of Draw Condition 3(A) is not ambiguous, it is imprecise. That imprecision allows for the certification of the Appellate Court Order to be done by any party and that is what was done here. That allowance is presumed to be deliberate and should be honored. *Atl. Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 900 (7th Cir. 1996) (Illinois courts presume each provision in a contract was either inserted or omitted deliberately).

Second, any ambiguity pointed to by Spiegel in Draw Condition 3(A) is not a reasonable one. *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1137–38 (7th Cir. 2001) (requiring ambiguity to be reasonable). Spiegel first argues that Draw Condition 3(A) must mean a certification from the Illinois Appellate Court, but the parties agree that such a reading would result in the impossibility of performance of Draw Condition 3(A). Such an interpretation is not favored. *Rock Island Bank*, 570 F.2d at 207 ("A construction that will sustain an instrument will be preferred to one that will defeat it. *Schiro v. W. E. Gould & Co.*, 18 Ill.2d 538, 543, 165 N.E.2d 286, 289 (1960)."). Spiegel then argues that Draw Condition 3(A) could mean a copy of the mandate after appeal from the Illinois Circuit Court, but that first requires a reading of Draw Condition 3(A) similar to that relied on by Wintrust and further requires the court to, at the exclusion of other reasonable outcomes, insert and enforce terms to the Draw Condition that are not there, but which the parties could have included had they wanted that result. *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 420 (7th Cir.1999) (courts should not insert words into a contract that are not there); *see also, e.g.*, *Ligurotis v. Whyte*, 951 F.2d 818, 820 (7th Cir. 1992) (showing where a letter of credit expressly required a mandate, not an opinion or order).

Third, even if the ambiguity were reasonable, the Seventh Circuit has instructed that that "[w]here a contract is fairly susceptible of two constructions, one which makes it fair and customary and which prudent persons would naturally enter into, while the other makes it inequitable, the former interpretation must be preferred to the latter. *Camp v. Hollis*, 332 Ill. App. 60, 68, 74 N.E.2d 31, 35 (1947)." *Rock Island Bank*, 570 F.2d at 207. Here, Wintrust's interpretation is the fair and customary one. It is fair because it was clearly the intent of the parties that the Letter of Credit be used precisely in the conditions in which it was. They showed in the contract that they could precisely state from how a certification must be obtained when they wanted such. They also showed that certifications from the Beneficiary were a possibility. So when they left it open as to where the certification would come from to satisfy Draw Condition 3(A), they left it open to a certification done in the manner as was done here. It is also customary in the sense that it satisfies the purpose for which it was needed, compliance with Illinois Supreme Court Rule 305. That purpose and language of that Rule is the outcome that has happened here, the satisfaction of the judgment after an unsuccessful appeal.

Fourth, reasonableness also appears to be the present standard for compliance, not strict compliance. *Integrated Measurement*, 757 F. Supp. at 943. The difference between a copy of the order certified by the court and one certified by an officer of the court along with confirming reference to the court's docket appears insignificant in the outcome.

Last, the discretion afforded Wintrust in determining whether a draw *appears* to satisfy the Draw Conditions in both the Letter of Credit (by incorporating the UCP) and the Illinois UCC means that Wintrust's honoring the draw under these conditions was appropriate.

To succeed here Spiegel must, at a very minimum, have shown that the terms of the Letter of Credit, as interpreted through the lens of the Illinois UCC, might be reasonably interpreted in his favor.[13]  Having done so, the burden would shift to Wintrust to respond to overcome the challenge raised.  He did not, so it did not.

For the reasons set forth above, Spiegel has failed to overcome the *prima facie* allowance of the Claim.

### CONCLUSION

Spiegel has failed to rebut the *prima facie* allowance of the Claim, which brings the Debtor's argument, along with the Objection, to an end.  As a result, by separate order entered concurrently with this Memorandum Decision, the Objection will be OVERRULED.

Dated: March 11, 2022                                    ENTERED:

_____
Judge Timothy A. Barnes
United States Bankruptcy Court

---

[13]      It is not enough for an objection to simply claim "I don't owe this," as many do.  More is necessary to overcome the *prima facie* allowance.