**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re:  Marshall Spiegel, | ) | Chapter 11 |
| | ) | Case No. 20 B 21625 |
| Debtor. | ) | Honorable Timothy A. Barnes |
| | ) | |

## DEBTOR'S FOURTH AMENDED PLAN OF REORGANIZATION

This Plan under Chapter 11 of the Bankruptcy Code proposes to pay Creditors of the Debtor in full 100% of their Allowed Claims from funds to be voluntarily distributed to the Debtor by Greenleaf, an entity in which the Debtor's son holds 99.9% of the equity.  All Creditors are Unimpaired under this Plan.  Since there are no Impaired Claims under this Plan, the Creditors will not vote to accept or reject the Plan.

The Debtor estimates that the total unsatisfied unsecured claims to be paid under this Plan are $313,791.19.  This Plan provides for six classes of creditors: (1)  Class 1: Governmental Unit Claims with estimated unsecured claims of $1,525.00, (2) Class 2: Priority Claims with estimated priority claims of $0, (3)  Class 3:  U.S. Bank Claim with an estimated secured claim of $513,631.27, (4)  Class 4:  Wintrust Bank Claim with an estimated unsecured claim of $18,523.07, (5)  Class 5:  Litigation Claims with estimated unsecured claims of $185,905.76, and (6) Class 6:  General Unsecured Claims with estimated unsecured claims of $107,837.36.

The disbursements under this Plan will be made within one week after the later of the Effective Date of the Plan or the Final Allowance Date of the respective Claim.  The Debtor anticipates that he will distribute a total of $313,791.19 to priority and general unsecured creditors under the terms of the Plan. This Plan also provides for the payment of Administrative Expense Claims in full and will pay the only secured creditor pursuant to the terms of the mortgage and loan documents related to its claim.  The Debtor reserves the right to object to any Claim filed in this case.

All Creditors should refer to Articles III through V of this Plan for information regarding the precise treatment of their Claim.  A Disclosure Statement that provides more detailed information regarding this Plan and the rights of Creditors has been circulated with this Plan.

Your rights may be affected. **You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## DEFINITIONS

The following terms are used throughout the Plan and generally have the same meaning in each instance as set forth below. Terms used herein also may be defined in the Bankruptcy

Code or the Bankruptcy Rules and readers should consult those sources as well to ascertain the meaning of an otherwise undefined term:

1.1     "Administrative Expense Claim" means an administrative expense or Claim under section 503 of the Bankruptcy Code that is entitled to priority under section 507(a)(1) of the Bankruptcy Code. Administrative Expense Claims include, without limitation, the actual and necessary costs and expenses of preserving the Estate and operating the Debtor's business Post-petition, including Post-petition compensation for legal and other services and reimbursement of expenses awarded under sections 330(a) or 331 of the Bankruptcy Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code.

1.2     "Administrative Expense Claim Bar Date" means thirty (30) days after the Confirmation Date.

1.3     "Allowed" when used in reference to a Claim means that such Claim or Interest or portion thereof (a) has not been objected to within such time as may be prescribed by the Bankruptcy Rules or order of Court, and which has either been timely filed with the Clerk of the Bankruptcy Court or listed by the Debtor in its schedules filed in this case as not contingent, unliquidated, or disputed or (b) has been objected to and subsequently allowed pursuant to a Final Order of the Bankruptcy Court.

1.4     "Assets" mean all property of the Debtors or in the possession of the Debtors on the Confirmation Date, including, without limitation, rights in intellectual property, general intangibles, Avoidance Actions, rights, claims and causes of action, whether equitable or legal, (including the right to prosecute or compromise and settle such rights, claims and causes of action) and any and all personal and real property belonging to the Debtor, in which the Debtor has or had an interest, or which is in the Debtor's possession on or before the Confirmation Date, including, but not limited to, proceeds (including cash proceeds) thereof.

1.5     "Bankruptcy Case" means the above-captioned proceeding under Chapter 11 of the Bankruptcy Code.

1.6     "Bankruptcy Code" or "Code" means title 11 of the United States Code and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time.

1.7     "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

1.8     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075 and the local rules of the Bankruptcy Court, as applicable from time to time to the Bankruptcy Case.

1.9     "Bar Date" with respect to non-governmental Creditors means May 27, 2021 and with respect to Governmental Unit means June 15, 2021, or such other date or dates fixed by Order(s) of the Bankruptcy Court as the last date(s) for the filing of Claims against the Debtor.

1.10     "Broker Costs" means the commission or other costs charged by a real estate agent or broker in the sale of real estate.

1.11     "Business Day" means any day other than a Saturday, a Sunday, or other day on which commercial banks located in Chicago are not open to carry on their ordinary commercial banking business.

1.12     "Cash" means cash or cash equivalents.

1.13     "CD" means a certificate of deposit.

1.14     "Chapter 11" means Chapter 11 of the Bankruptcy Code.

1.15     "Chapter 11 Case" means this case filed by the Debtors pursuant to Chapter 11 of the Bankruptcy Code.

1.16     "Claim" has the same meaning as set forth in Section 101 of the Bankruptcy Code.

1.17     "Class" means any group of holders of claims as described in Article 2 of this Plan.

1.18     "Condo Association" means 1618 Sheridan Condominium Association.

1.19     "Condominium" means the Debtor's residence located at 1618D Sheridan Road, Wilmette, IL 60091.

1.20     "Confirmation Date" means the date upon which the Confirmation Order is entered in accordance with the provisions of the Bankruptcy Code; provided, however, that if the Confirmation Order or consummation of this Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

1.21     "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.22     "Confirmation Order" means the order that the Bankruptcy Court enters confirming the Plan.

1.23     "Court" means the United States Bankruptcy Court for the Northern District of Illinois presiding over this case.

1.24     "Creditor" means any entity that is a holder of (a) a Claim that arose on or before the Petition Date, or (b) a Claim against Debtor's estate of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.25     "Debtor" means Marshall Spiegel.

1.26 "Debtor-in-Possession" mean the Debtor when acting in his capacity as representative of the Estate prior to the Effective Date.

1.27 "Disbursement Account" means an account maintained in a FDIC insured institution, which will be funded on or before the Effective Date and from which the Disbursement Agent will have authority to make disbursements to Creditors under this Plan.

1.28 "Disbursement Agent" means Robert Handler of Commercial Recovery Associates, LLC.

1.29 "Disclosure Statement" means the written Disclosure Statement relating to this Plan approved by the Court pursuant to section 1125 of the Bankruptcy Code.

1.30 "Disputed Claim" means a Claim against the Debtor, the allowance of which, in whole or part, is the subject of a timely objection filed by the Debtor, the Reorganized Debtor (as defined herein), or any party in interest.

1.31 "Disbursement Date" means the date on which disbursements to Holders of Allowed Claims are to be made, with the first such date occurring as soon as practicable following the Effective Date, but not later than one week after the later of the Effective Date of the Plan or the Final Allowance Date of the respective Claim.

1.32 "Effective Date" means fourteen (14) days after the Confirmation Order becomes a Final Order.

1.33 "Estate" has the meaning ascribed in Section 541 of The Bankruptcy Code.

1.34 "Exempt Property" means any real or personal property that the Debtors may exempt from Debtors' estate pursuant to section 522 of the Bankruptcy Code.

1.35 "Final Allowance Date" means the date on which the amount of a particular Claim or Interest has been finally allowed by the Bankruptcy Court by a Final Order.

1.36 "Final Order" means an order of the Bankruptcy Court (a) that has not been reversed, modified, amended or stayed, (b) the time for appeal from which has expired, (c) as to which no such appeal, review or rehearing is pending and (d) that has become conclusive of all matters adjudicated thereby and is in full force and effect.

1.37 "General Unsecured Claim" means any Claim for goods or services provided or rendered, or to be provided or rendered, to the Debtors prior to the Petition Date, which is neither an Administrative Expense Claim, nor a Governmental Unit Claim, nor a Secured Claim, nor a Priority Claim, nor a Litigation Claim. Unsecured Claims include, without limitation, Claims arising as a result of the rejection of executor contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code or this Plan, or the unsecured portion of a Claim under the terms of Section 506(a) of the Bankruptcy Code, unless such claims are included within another Class.

1.38 "Governmental Unit" means the definition in section 101(27) of the Bankruptcy Code.

1.39	"Governmental Unit Claim" means any claim filed by a Governmental Unit.

1.40	"Greenleaf" means 1116-22 Greenleaf Building LLC, an entity in which the Debtor's son Matthew Spiegel holds 99.9% of membership interest and the Debtor holds 0.1% of membership interest.

1.41	"Holder" when used in conjunction with the term "Claim" means an entity with a Claim.

1.42	"Impaired" has the meaning ascribed by section 1124 of the Bankruptcy Code.

1.43	"Matthew Spiegel" means the Debtor's son.

1.44	"Litigation Claims" means the Claims of Valerie Hall (POC #5), Duane Morris LLP (POC #6), Marie Fracoise Waite (POC #7), Condo Association (POC #8), Condo Association (POC #9), James Waite (POC #10), William McClintic (POC #11), Corinne McClintic (POC #12), and Michael C. Kim, individually and for the insurance carrier (POC # 13) for which the Bankruptcy Court entered an abstention order on October 25, 2021.

1.45	"Person" means any individual, corporation, partnership, joint venture, trust, estate or unincorporated organization.

1.46	"Petition Date" means December 16, 2020, the day the Debtor filed his petition for relief under Chapter 11 of the Bankruptcy Code.

1.47	"Plan" means this Plan of Reorganization including any amendments or modifications thereto.

1.48	"POC" means proof of claim.

1.49	"Post-petition" means subsequent to the Petition Date.

1.50	"Priority Claim" means any claim other than an Administrative Claim, to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.51	"Professional" means any person or entity retained or entitled to be compensated pursuant to sections 326, 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code.

1.52	"Reorganized Debtor" means the Debtor from and after confirmation.

1.53	"Secured Claim" means (a) a Claim against the Debtor held by any Person or entity, including a judgment creditor of the Debtor, secured by a lien on any asset of the Debtor, which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of any interest in property of the Estate securing such Claim; or (b) a Claim Allowed under this Plan as a Secured Claim.

1.54    "Secured Creditor" means any Creditor who holds a Secured Claim.

1.55    "Unclassified Claims" means Claims of the kind specified in Sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code, which Claims shall not be classified pursuant to Section 1123(a)(1) of the Bankruptcy Code.

1.56    "Unimpaired" means not Impaired.

1.57    "U.S. Bank" means U.S. Bank, National Association.

1.58    "U.S. Bank Claim" means the claim of U.S. Bank arising out of the U.S. Bank Loan Documents.

1.59    "U.S. Bank Loan Documents" means any mortgage, note or related documents related to U.S. Bank's loan to the Debtor secured by the Condominium.

1.60    "U.S. Trustee Fees" means all fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6).

1.61    "Wintrust Bank" means Wintrust Bank or Wintrust Financial Corporation.

1.62    "Wintrust Bank Claim" means the Claim filed by Wintrust Bank in this case.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 Class 1. Governmental Unit Claims.  The Claims of all Creditors which are Governmental Units.  The City of Chicago Department of Finance is the only member of Class 1.

2.02 Class 2. Priority Claims.  The Debtor is not aware of the existence of any Creditors in this class.

2.03 Class 3. U.S. Bank Claim. U.S. Bank is the only member of Class 3.

2.04 Class 4. Wintrust Bank Claim.  Wintrust Bank is the only member of Class 4.

2.05 Class 5. Litigation Claims.  The Claims Valerie Hall (POC #5), Duane Morris LLP (POC #6), Marie Fracoise Waite (POC #7), Condo Association (POC #8), Condo Association (POC #9), James Waite (POC #10), William McClintic (POC #11), Corinne McClintic (POC #12), and Michael C. Kim (POC #13).

2.06 Class 6. General Unsecured Claims.  The members of Class 6 are any Creditor holding a General Unsecured Claim.

# ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND U.S. TRUSTEES FEES

3.01 Unclassified Claims. Under section §1123(a)(1), administrative expense claims are not in classes.

3.02 Administrative Expense Claims. Each Holder of an Administrative Expense Claim allowed under § 503 of the Code will be paid in full on the Disbursement Date, in Cash, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtor.  The funds to pay the Administrative Expense Claims will come from a voluntary distribution to the Debtor from Greenleaf which will be place in the Disbursement Account from which the Disbursement Agent will pay the Administrative Expense Claims.  The deadline for filing a request for allowance of Administrative Expense Claims which arose prior to the Confirmation Date is the Administrative Expense Claim Bar Date.  Any Administrative Expense Claims which are not timely filed by the Administrative Expense Claim Bar Date will be barred.

3.03 United States Trustee Fees. All U.S. Trustee Fees will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Disbursement Date.

# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1. Governmental Unit Claims. | Unimpaired | The City of Chicago Department of Finance is the only creditor to assert a Governmental Unit Claim in the amount of $1,525.  Class 1 will receive payment of 100% of its Claim. |
| Class 2. Priority Claims. | Unimpaired | No Creditors have asserted a Priority Claim and the Debtors are not aware of any Claims in Class 2.  To the extent applicable, Class 2 will receive payment of 100% of its Claim(s). |
| Class 3. U.S. Bank Claim. | Unimpaired | U.S. Bank filed a Claim on January 1, 2014 in the amount of $513,631.27, secured by the Condominium.  The Debtor has been making payments due under the U.S. Bank Loan Documents during this case in the ordinary course of business and will continue to make payments in accordance with the U.S. Bank Loan Documents after the Effective Date.  The principal amount of any payments the Debtor has made to U.S. Bank prior to the Effective Date will be credited toward the principal |

| | | |
|---|---|---|
| | | amount due to U.S. Bank. U.S. Bank's mortgage and security interest shall continue in the Condominium shall be unaltered by this Plan.<br><br>Class 3 will receive 100% of its secured claim in accordance with the terms of the U.S. Bank Loan Documents. |
| Class 4. Wintrust Bank Claim. | Unimpaired | Wintrust Bank filed a Claim on February 10, 2021 in the amount of $1,243,523.07 ($1,225,000 principal and $18,523.07 interest) based on a letter of credit which was issued on or about May 22, 2019, as bond for an appeal. The letter of credit was secured by four CDs: (a) Account D642 owned by the Debtor in the amount of $250,000, (b) Account 2620 in the amount of $500,000 owned by the Debtor and Matthew Spiegel jointly, (c) Account 8763 in the amount of $250,00 owned by Matthew Spiegel, and (d) Account 4178 in the amount of $225,000 owned Matthew Spiegel.  Wintrust paid $1,225,000 to the beneficiaries of the letter of credit on or about December 3, 2021.<br><br>Wintrust Bank drew on its collateral CDs in the amount of $1,225,000 and, therefore, Wintrust's claim will be deemed satisfied and reduced by $1,225,000.<br><br>To the extent the amount of Wintrust Bank's Claim exceeds the $1,250,000 it received from its collateral CDs, the Debtor will pay the balance of Wintrust Bank's Claim from the Disbursement Account on the Disbursement Date. |
| Class 5. Litigation Claims. | Unimpaired | The unpaid Litigation Claims total $185,905.76.<br><br>The Litigation Claims relate to litigation which is pending between the Debtor and the Holders of the Litigation Claims, in the Circuit Court of Cook County, Illinois and Illinois Appellate Courts.  They are currently subject to a pending appeal.  The Debtor objected to all of the Litigation Claims and the Bankruptcy Court has abstained from adjudicating the Litigation Claims. |

| | | None of the Litigation Claims which were filed as "unknown" amounts have any pending litigation to liquidate such Claims and will be paid $0 on account of such Claims. The Litigation Claims have been, in large part, satisfied by the payment by Wintrust Bank to the Holders of the Litigation Claims from the draw on the letter of credit from Wintrust Bank. The satisfied portions of the Litigation Claims will be deemed moot or disallowed as satisfied prior to the Confirmation Date. The remaining amounts the Holders of the Litigation Claims have asserted in Illinois state court which have not been satisfied are $26,871 claimed by Valerie Hall, $120,791.85 claimed by the Condo Association, and $38,242.91 claimed by Michael Kim (collectively, the "Unsatisfied Litigation Claims"). Class 5 Creditors will receive payment of 100% of the Allowed Unsatisfied Litigation Claims from the Disbursement Account on the Disbursement Date. |
|---|---|---|
| Class 6. General Unsecured Claims. | Unimpaired | The Claims of General Unsecured Creditors total $107,837.36. Class 6 Creditors will receive payment of 100% of the General Unsecured Claims from the Disbursement Account on the Disbursement Date. |

## ARTICLE V
## PROVISIONS FOR DISPUTED AND UNKNOWN CLAIMS

5.01  Disputed Claims and Estimation of Claims

    Any Creditor whose Claim was listed in the Debtor's schedules as contingent, unliquidated, or disputed or in an unknown amount and who did not file a Claim before the Bar Date, will not share in any disbursement under this Plan. Any Claim which was listed in the Debtor's schedules shall be superseded by a proof of claim which the respective Creditor filed before the Bar Date. Any Claim filed after the Bar Date or in an unknown amount will be deemed disallowed and will not share in any disbursements under this Plan. No Claim will be entitled to a payment or disbursement under this Plan unless it is Allowed.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases.

To the extent that they are executory contracts, the Debtor assumes his pre-petition contracts with attorneys Julie A. Boyton and Christopher A. Langone to provide legal services and rejects his pre-petition contract with attorney John S. Xydakis to provide legal services.

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases, if any, not expressly assumed under this section, on or before the date of the Confirmation Order. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than ten (10) days after the date of the Confirmation Order.

The Debtor may file a notice of assumption of executory contracts and unexpired leases prior to the Confirmation Hearing on this Plan, as an Exhibit to this Plan, which will be incorporated into this section, and served upon the counter-party to such executory contract or unexpired lease, the United States Trustee, and all creditors of the estate.  Any executory contract or unexpired lease contained in such notice shall be deemed assumed under this section, unless a party in interest objects to such assumption within fourteen days (14) of such notice and the Bankruptcy Court sustains such objection.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 Payments and disbursements under the Plan will be funded by a voluntary distribution to the Debtor from Greenleaf, of which the Debtor's son Matthew Spiegel is the 99.9% member and the Debtor is the 0.1% member.  Greenleaf shall make a distribution on or before the Disbursement Date to the Debtor in an amount not less than the estimated amount of outstanding unpaid unsecured Claims of $313,791.19, plus $30,000.00 for the costs and fees of the Disbursement Agent, plus the amount of any estimated, pending, or Allowed unpaid Administrative Claims.  The funds distributed to the Debtor by Greenleaf pursuant to this Plan will be held in a segregated Disbursement Account to which the Disbursement Agent will have access.

To the extent that any of the unsecured Claims are disallowed, the Disbursement Agent will refund the Debtor from the Disbursement Account the amount equal to the disallowed portion of such Claim.  To the extent that the Allowed unsecured Claims exceed in the aggregate $313,791.19, Greenleaf will make an additional distribution to the Debtor in such excess amount which the Debtor will deposit into the Disbursement Account. To the extent that the costs and fees of the Disbursement Agent exceed $30,000.00, Greenleaf will make an additional distribution to the Debtor to fund such additional costs and fees which the Debtor will deposit into the Disbursement Account.  After all disbursements have been made pursuant to this Plan, the Disbursement Agent will refund to the Debtor any excess funds in the Disbursement Account.

      7.02 Upon Confirmation, the Debtor shall be vested with his assets, subject only to the terms and conditions of this Plan. The Debtor shall be entitled to continue to manage his business and financial affairs without further Order of this Court as set forth in the Plan.

      7.03 Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its lien or security interest in any assets of the Debtor or otherwise enforcing claims against the Debtor and his assets except in a manner provided for under the terms and conditions of this Plan. Such injunction shall not affect the right of any holder of an Allowed Secured Claim to foreclose upon any security interest provided in the Plan in the event of any post-Confirmation default under this Plan as permitted by the Plan.  This injunction shall remain in full force and effect to prevent said actions as long the Court does not find that the Debtor is not in compliance with the Plan until all disbursements have been made in accordance with the terms and conditions of the Plan.

      7.04 Robert Handler shall be the Disbursement Agent for the payments required under the Plan.  The Disbursement Agent will be paid by the Debtor an hourly rate for his services from distributions to the Debtor from Greenleaf.  In the event that Mr. Handler becomes unwilling or unable to serve as Disbursement Agent, the Debtor will retain another person who is a member of the panel of trustees in cases filed under Subchapter V of Chapter 11 in the Northern District of Illinois to serve as Disbursement Agent under this Plan.

      7.05 The Debtor will have the right to make any disbursements to Creditors earlier than required by the Plan, without penalty.

      7.06 The Plan is self-executing. Except as expressly set forth in the Plan, the Debtor shall not be required to execute any newly created documents to evidence the Claims, liens or terms of repayment to the holders of any Allowed Claims. The terms of this Plan will exclusively govern payments to creditors and any other rights of creditors as against the Debtor and his property. Furthermore, upon the completion of the payments required under this Plan to the Holders of Allowed Claims, such Claims, and any liens that may support such Claims, shall be deemed released and discharged.

      7.07 The Bankruptcy Court shall retain jurisdiction over this Plan and to determine the allowance of Claims against the Debtor pursuant to section 502 of the Code, including but not limited to the allowance or disallowance of any claim which has not been Allowed or disallowed as of the date of the Confirmation Order and fixing of allowance of compensation and other Administrative Expense Claims in accordance with section 503 of the Code.

**ARTICLE VIII**
**GENERAL PROVISIONS**

      8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02 Effective Date of Plan. The effective date of this Plan is fourteen (14) days after the Confirmation Order becomes a Final Order.

8.03 Stay of Actions Against the Debtor and Reorganized Debtor and Releases of Professionals.   Except as specifically provided herein, from the Effective Date through the completion of this Plan no earlier than five (5) years after the Effective Date, each Person (as defined in the Bankruptcy Code) shall be stayed and enjoined from taking any action against (a) the Debtor and (b) the Reorganized Debtor on account of or related to any and all Claims, obligations, guarantees, suits, judgments, damages, rights, causes of action or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Claim of such person or entity against the Debtor or any other matter in any way related to, or arising from, the Debtor or the operation of the Debtor, the administration of the Bankruptcy Case, or the negotiation, preparation, formulation, solicitation, dissemination, implementation, confirmation and consummation of the Plan (the "Stayed Claims") and the Confirmation Order shall enjoin the commencement or prosecution by any Person, whether directly or derivatively, of the Stayed Claims; provided that the Reorganized Debtor is in compliance with the Plan.

Subject to Section 1125(e) of the Bankruptcy Code, each of the respective employees, agents, representatives and attorneys (including the Freeborn and Peters LLP as Debtor's counsel) of the Debtor and Reorganized Debtor, and each of their heirs, executors, administrators, successors and assigns, shall neither have nor incur any liability to any person for any act taken or omitted to be taken in connection with or related to the administration of the Bankruptcy Case, the solicitation of votes on, or the negotiation, preparation, formulation, solicitation, dissemination, implementation, confirmation or consummation of the Plan, the disclosure statement or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with this Bankruptcy Case or the Plan; provided that this paragraph shall not apply to any claims the Debtor has against David Lloyd or John Xydakis.

8.04 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.05 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.06 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.07 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE AND FINAL DECREE

9.01 Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. March 22, 2021 was set as the last day to file a complaint to except certain debts from discharge as provided in Rule 4007(c) and §523 of the Code.  No complaints objecting to the dischargeability of Claims against the Debtor were filed. All creditors have waived their rights to claims under § 523 of the Code and the Debtor will be discharged from any debt excepted from discharge under § 523 of the Code upon completion of the Plan.  The deadline to object to discharge of the Debtor under § 727 of the Code shall be the first date set for the Confirmation Hearing, regardless of whether the date of the Confirmation Hearing is continued from time to time.   Any Creditor or party in interest which has not filed an adversary proceeding under § 727 of the Code, on or before the first date set for the Confirmation Hearing shall be deemed to waive any rights under §727 of the Code.

9.02 Final Decree.  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.  The case shall be deemed fully administered if the Plan is substantially consummated by the Reorganized Debtor commencing disbursements to any Class under the Plan.  The Final Decree may be entered prior to the complete payment of claims under the Plan.

Dated:  November 29, 2022                                    Respectfully submitted,

By: /s/ Marshall Spiegel
The Plan Proponent

By: /s/ Shelly A. DeRousse
Attorney for the Plan Proponent

Shelly A. DeRousse, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6000
Facsimile: (312) 360-6520