### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re:  Marshall Spiegel | **)** | **Chapter 11** |
| | **)** | **Case No. 20 B 21625** |
| **Debtor.** | **)** | **Honorable Timothy A. Barnes** |
| | **)** | |

### DEBTOR'S FOURTH AMENDED DISCLOSURE STATEMENT FOR HIS
### FIFTH AMENDED PLAN OF REORGANIZATION

**Dated:**     **January 16, 2023**

Submitted by:

Shelly A. DeRousse, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6000
Facsimile: (312) 360-6520

*Attorney for Debtor and Debtor-in-Possession*

### IMPORTANT:

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PROPOSED FIRST AMENDED PLAN OF REORGANIZATION.  ACCORDINGLY, PLEASE READ THIS DOCUMENT WITH CARE.**

## TABLE OF CONTENTS

I.      **INTRODUCTION** ...................................................................................4

     A.    **Purpose of This Document** ..................................................................4

     B.    **No Voting to Accept Plan; Deadlines for Objecting; Date of Plan Confirmation Hearing** ..............................................................6

        1.    *No Voting to Accept or Reject the Plan* ...........................................6

        2.    *Deadline For Objecting to the Disclosure Statement or Confirmation of the Plan* ..........................................................6

        3.    *Identity of Person to Contact for More Information* ...........................7

     C.    **Disclaimer** .......................................................................................7

II.     **BACKGROUND** ...................................................................................7

     A.    **Description of the Debtor** ..................................................................7

     B.    **Payments to Insiders of the Debtor** ..................................................7

     C.    **Events Leading to Chapter 11 Filing** ................................................8

     D.    **Significant Events During the Bankruptcy Case** ...............................10

     E.    **Projected Recovery of Avoidable Transfers** ....................................16

     F.    **Claims Objections** ...........................................................................16

     G.    **Current and Historical Financial Conditions** ....................................17

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** .......................................17

     A.    **What is the Purpose of the Plan of Reorganization** ...........................17

     B.    **Administrative Expenses and U.S. Trustee Fees** ...............................17

        1.    *Administrative Expenses (Unclassified)* ...........................................17

        2.    *U.S. Trustee Fees (Unclassified)* ....................................................18

     C.    **Classes of Claims** .............................................................................18

        1.    *Governmental Unit Claims (Class 1)* ...............................................18

        2.    *Priority Claims (Class 2)* ................................................................18

   3. *U.S. Bank Claim (Class 3)*..................................................................18

   4. *Wintrust Bank Claim (Class 4)*.........................................................19

   5. *Litigation Claims (Class 5)*................................................................19

   6. *General Unsecured Claims (Classes 6)*...............................................20

   7. *Matthew Spiegel Claim* (*Class 7*).........................................................20

 **D.** **Means of Implementing the Plan**.......................................................21

 **E** **Risk Factors**.....................................................................................20

 **F.** **Executory Contracts and Unexpired Leases**.................................22

 **G.** **Tax Consequences of Plan**.................................................................23

**IV.** **CONFIRMATION REQUIREMENTS AND PROCEDURES**...........................23

 **A.** **Who May Vote or Object**...................................................................23

   1. *What Is an Allowed Claim?*..................................................................23

   2. *What Is an Impaired Claim?*.................................................................23

   3. *Who is **Not** Entitled to Vote*...............................................................24

 **B.** **Votes Necessary to Confirm the Plan**.............................................24

 **C.** **Liquidation Analysis**........................................................................24

 **D.** **Feasibility**........................................................................................24

   1. *Ability to Initially Fund Plan*...............................................................25

   2. *Ability to Make Future Plan Payments and*
    *Operate Without Further Reorganization*...........................................25

**V.** **EFFECT OF CONFIRMATION OF PLAN**...........................................................25

 **A.** **DISCHARGE OF DEBTOR**.................................................................25

 **B.** **STAY OF ACTIONS AGAINST THE DEBTOR AND**
  **REORGANIZED DEBTOR**.................................................................25

 **C.** **RELEASES OF PROFESSIONALS**.......................................................26

 **D.** **INJUNCTION**......................................................................................26

 **E.** **MODIFICATION OF PLAN**.................................................................26

F.    **FINAL DECREE** ........................................................................................26

I.      **INTRODUCTION**

This is the amended disclosure statement (the "**Disclosure Statement**") in the Chapter 11 case of Marshall Spiegel (the "**Debtor**" or "**Plan Proponent**").  This Disclosure Statement contains information about the Debtor and describes the Fifth Amended Plan of Reorganization (the "**Plan**") filed by the Debtor on January 16, 2023.   A full copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.  *Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 16-19 of this Disclosure Statement.  Attached as Exhibits to this Disclosure Statement are copies of the following:

**Exhibit A**- The Plan

**Exhibit B**- Identity and Fair Market Value of Non-Exempt Assets

**Exhibit C**- Projection of Cash Flow for First Year After Confirmation

**Exhibit D**- Liquidation Analysis

**Exhibit E**- Financial Statements of Greenleaf

**Exhibit F**- Summary of Operations During Chapter 11 Case

**Exhibit G**- Personal Tax Returns of Debtor for 2019, 2020, and 2021

A.      **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court for the Northern District of Illinois (the "**Court**" or "**Bankruptcy Court**") will consider when deciding whether to confirm the Plan,
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

B.      **No Voting to Accept Plan; Deadlines for Objecting; Date of Plan Confirmation Hearing**

This Disclosure Statement is being distributed by the Debtor to those creditors and holders of interests who are entitled to consider the Plan as set forth herein.  Since all creditors are unimpaired because the Plan proposes to pay 100% of Allowed Claims, creditors will not vote on the Plan.  ***The Official Committee of Unsecured Creditors and the United States Trustee disagree that the creditors are unimpaired under the Plan and not entitled to vote for or against the Plan.***  On May 22, 2023 at 9 a.m., unless the Court subsequently orders otherwise, the Court will hold a hearing to approve the Plan and this Disclosure Statement as containing such information as would enable a hypothetical, reasonable investor typical of the holders of claims and interests being solicited herein to make an adequately informed judgment in exercising such holder's right to vote either to accept or to reject the Plan.

The Court's approval of this or any other Disclosure Statement does not constitute a determination by the Court as to the merits of the Plan or whether any creditor or holder of an interest should vote to accept or reject the Plan.  The Court has not yet confirmed the Plan.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**THE DEBTOR BELIEVES THAT THE PLAN PROPOSED HEREIN IS IN THE BEST INTERESTS OF ITS CREDITORS.  AS SUCH, THE DEBTOR STRONGLY URGES ALL CREDITORS TO SUPPORT THE PLAN.**

1.      *No Voting to Accept or Reject the Plan*

All Creditors are unimpaired by the Plan or are insiders of the Debtor and, therefore will not be voting to accept or reject the Plan.  See section IV.A. below for a further discussion of voting eligibility.

2.      *Deadline For Objecting to the Disclosure Statement or Confirmation of the Plan*

Objections to the adequacy of the Disclosure Statement or confirmation of the Plan must be filed with the Court and served upon the following persons on or before March 15, 2023:

Shelly A. DeRousse
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606

Gretchen Silver
Office of U.S. Trustee
219 South Dearborn, 8th Floor
Chicago, Illinois 60604

Howard Adelman
Nicholas R. Dwayne
Adelman & Gettleman Ltd.
53 W. Jackson Blvd

Suite 1050
Chicago, Illinois 60604

3.     *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact counsel for the Debtor, Shelly A. DeRousse at Freeborn & Peters LLP, 311 South Wacker Drive, Suite 3000, Chicago, Illinois 60606 or sderousse@freeborn.com.

C.     **Disclaimer**

**The Court has not yet approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation. A hearing will be held to determine the adequacy of this Disclosure Statement and approve the Plan on the date referenced above in Section I.B.**

II.     **BACKGROUND**

A.     **Description of the Debtor**

The Debtor is an individual whose primary source of income is through regular distributions from 1116-22 Greenleaf Building LLC ("**Greenleaf**"), an entity which owns and operates a 24 unit residential apartment building (the "**Greenleaf Apartment Building**"). The Debtor owns 0.1% of the membership interests in Greenleaf and the Debtor's son Matthew Spiegel owns 99.9% of the membership interests in Greenleaf. The Debtor provides services to manage the Greenleaf Apartment Building. Greenleaf has agreed to make distributions to the Debtor in the amount necessary to fund the Plan for the benefit of the Debtor's creditors.

B.     **Payments to Insiders of the Debtor**

The following are insiders of the Debtor, as defined in §101(31) of the United States Bankruptcy Code (the "**Code**" or the "**Bankruptcy Code**"):

Matthew Spiegel

Other Relatives of the Debtor

During the one year prior to the Petition Date, the Debtor made no payments to insiders. During the pendency of this Chapter 11 case, the Debtor did not pay any compensation to insiders. Matthew Spiegel has a debit card for the Debtor's account a Chase Bank, for the sole purpose of making deposits and purchasing food, certain living necessities and health items for the Debtor. He has never used the debit card for his own personal use.

C.     **Events Leading to Chapter 11 Filing**

Greenleaf is a family business owned predominantly by the Debtor's Son Matthew Spiegel. The Debtor's primary source of income has been distributions from Greenleaf.  Greenleaf produces rental income from the Greenleaf Apartment Building located at 1116-22 Greenleaf Avenue, Wilmette, Illinois.  Greenleaf operates as a for profit limited liability company and the Debtor assists in managing the Greenleaf Apartment Building.  The Debtor's other sources of income are Social Security retirement distributions and interest on certificates of deposit. The Debtor received over $73,000 in income from the building in 2019, and over $111,000 in 2020.

Prior to 2019, the Debtor had no serious financial difficulties. The value of the Debtor's assets exceeded his minimal liabilities, and he was paying his financial obligations on a regular basis as they came due. While the Debtor was financially stable in 2019, the circumstances that brought him to the filing of this Chapter 11 case began with a sanctions finding in April 2019, and subsequent negative appellate decision in December 2020 (which was later stricken for lack of jurisdiction after bankruptcy filing).

### *Transfer of Greenleaf Apartment Building*

In March of 2018, the Debtor transferred his ownership interest in the Greenleaf Apartment Building to Greenleaf, which was a newly-created limited liability company, of which the Debtor is a 0.1% owner.  Matthew Spiegel, is the owner of 99.9% of Greenleaf.  The purpose of this transfer was to take advantage of provisions of the Tax Reform Act of 2017 (the "**Tax Act**"), which allowed for a 20% reduction of income for "pass through entities."[1]  It was originally reported that the Tax Act applied to Subchapter S corporations, partnerships, and limited liability companies.  Also, the Debtor had been experiencing medical issues for years and wanted to further his estate planning and succession.  This plan would result in a potential savings on state inheritance tax in the future.  At the time of the transfer, the Debtor was solvent on a balance-sheet and cash flow basis.  With approval of Matthew Spiegel and because the Debtor was helping manage the Greenleaf Apartment Building, the Debtor continued to receive income (in the form of distributions) from Greenleaf to fund his living expenses.

The transfer of the Debtor's ownership interest in the Greenleaf Apartment Building was outside the two-year look-back period for fraudulent transfers under Section 548 of the Bankruptcy Code but within the four-year look-back period for fraudulent transfers under Illinois law, 740 ILCS 160/1 et seq.  Illinois law requires actual intent to hinder, delay, or defraud creditors to establish a fraudulent transfer. The Debtor has determined not to pursue the Greenleaf for recovery of the real estate on a fraudulent transfer basis, for the following reasons:

1)  The Debtor is receiving the net income from Greenleaf for the benefit of his creditors, and there would be no increase in income to the Debtor if he recovered the Greenleaf Apartment Building;

2)  The creditors will be paid 100% of their claims, in full, within a week of the later of the Effective Date or the allowance of such claims, so creditors would not receive any greater payment if the property were recovered;

---

1 For example, under the Tax Reform Act of 2017, if gross income is $100,000, and expenses are $40,000, leaving net income of $60,000, taxable income would be reduced to $48,000.

3) At the time of the transfer, the Debtor was solvent, did not have an actual intent to hinder, delay, or defraud creditors, had not been assessed the court sanctions that led to this Chapter 11 case, was paying his expenses as they came due, and structured the transaction for legitimate tax considerations;[2]

4) Greenleaf has agreed to make distributions to the Debtor in an amount sufficient to fund an account from which will be sufficient funds to pay all creditors in full upon confirmation of the Plan; and

5) The expense of such litigation would not be in the best interest of creditors or the estate, as it would result in unnecessary legal expenses in a case that will likely not succeed because the Debtor was not insolvent at the time of the transfer and because it will become moot when the creditors will be paid pursuant to the Plan.

### *Litigation Leading to the Bankruptcy Filing*

The Debtor has lived at 1618 Sheridan Road, Wilmette, Illinois, in a condominium unit for about 29 years. The association for the condominium building is the 1618 Sheridan Road Condominium Association (the "**Association**" or the "**Condominium Association**"). For 10 of those years, the Debtor served as a member and secretary of the condominium board. Over several years, disputes of various kinds arose between the Debtor and his neighbors who became board members. In October 2015, the Debtor filed suit against a board member Valerie Hall, in Case No. 15 L 10817 in the Circuit Court of Cook County over her ownership rights and qualifications to serve on the board. In December of 2015, Condominium Association filed suit against the Debtor, in Case No. 15 CH 18825, in the same Chancery division of the same court. In or about April 2016, the Debtor filed suit against many of the same parties, in Case No. 16 L 3564, in the same court. The three cases were ultimately consolidated by the court. The contending parties filed petitions for sanctions against each other as the litigation progressed.

On March 29, 2019, the Circuit Court of Cook County denied the Debtor's petition for sanctions and granted the petitions for sanctions filed by defendant Valerie Hall, her counsel Duane Morris LLP, Condominium Association, Marie Francoise Waite, James Waite, William McClintic, Corinne McClintic, and Michael C. Kim, former attorney for the Condominium Association. The sanctions totaled over $1 million. The sanctions award delivered a stunning financial blow to the Debtor. The Debtor promptly appealed the decision to the Appellate Court of Illinois, First District, in separate cases numbered 1-19-0840, 1-19-0915, 1-19-0916, and 1-19-0917, which cases were consolidated by the Appellate Court.

To post the required appellate bond, the Debtor obtained a letter of credit from Wintrust Bank in the amount of $1,225,000.00 in May 2019. As security for the letter of credit, the Debtor pledged a certificate of deposit in the amount of $250,000, with an account number ending in -0642; the Debtor and his son Matthew Spiegel pledged a joint certificate of deposit in the amount of $500,000, with an account number ending in -2520; and the Debtor's son Matthew pledged two certificates of deposit, with account numbers ending in -8763 and -4178, in the amount of $250,000 and $225,000, respectively. All four certificates of deposit are on deposit at Wintrust Bank.

---

2 Also, the Debtor had no reason to believe that any significant judgment would be entered against him, as the motion for sanctions in pending litigation was not even filed until six months after the transfer.

On December 3, 2020, the Appellate Court of Illinois denied the Debtor's appeal and upheld the $1 million+ sanctions award. This led to the filing of this Chapter 11 case on December 16, 2020. At about the time of the filing of this case, Wintrust Bank paid the sanctions claimants in full from the letter of credit. This satisfied the claims of the sanctions claimants at the time, although they subsequently sought supplemental sanctions related to the litigation referred to herein, which were granted by the state court during the pendency of the Bankruptcy Case. Wintrust became a secured creditor in the amount of the Debtor's assets which secured the $1,225,000 letter of credit, and has filed a claim for $1,243,523.07, including interest.

The Debtor filed his Chapter 11 bankruptcy petition on December 16, 2020 (the "**Petition Date**").

### *Debtor's Source of Income*

The Debtor's primary source of income is distributions from Greenleaf. Greenleaf generates its income from managing and renting out units in the Greenleaf Apartment Building.  In 2019, Greenleaf made numerous capital improvements to the Greenleaf Apartment Building, which negatively affected the profitability of the building. That year, Greenleaf's gross income was $355,451, and net income was approximately $73,000. Greenleaf distributed approximately $73,000 to the Debtor in 2019. That year Greenleaf also had a one-time indemnification cost to the Village of Wilmette exceeding $31,000 and over $19,000 in fees associated with a reduction in real estate taxes.

In 2020, with fewer expenses for repairs and upgrades than the prior year, the Greenleaf Apartment Building produced increased net income for Greenleaf. Greenleaf's gross income was $337,766, slightly less than the prior year.  Vacancies in several apartments, as a result of reduction of prospective renters during shut downs caused by the Covid pandemic and necessary repairs and improvements, caused a decrease of $18,000 in gross rental income, and while operating expenses increased due to $4,000 in real estate broker fees, a $10,000 property tax increase and legal fees of over $26,000, among other things.  Greenleaf's net income for 2020 was just over $110,000.

The Debtor's personal tax returns for the years 2019 and 2020, which show his distribution income from Greenleaf, are attached hereto as **Exhibit G**.

In 2021, the occupancy of the Greenleaf Apartment Building remained steady and the gross rental income increased to $349,852 and Greenleaf's net income for 2021 was approximately $115,000.  For the first half of 2022, Greenleaf's gross income was just under $200,000 and its net income was just under $78,000.  Financial statements of Greenleaf for the year 2021 and the first half of 2022 are attached to this Disclosure Statement as **Exhibit E**.

All of the units in the Greenleaf Apartment Building are currently rented with a waiting list, and the Debtor expects that the occupancy rate will remain steady going forward and that he will continue to receive distributions from Greenleaf in the future.

### D.    **Significant Events During the Bankruptcy Case**

On the Petition Date, the Debtor commenced this case under Chapter 11 the Bankruptcy Code. The Debtor continues to operate his business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  The Debtor is an individual and has no lenders with a security interest in his income.  On March 3, 2021, the Office of the U.S. Trustee appointed an official committee to represent

the interests of unsecured creditors, as amended on March 30, 2021 (the "**Committee**").

### Employment of Professionals

On February 4, 2021, David P. Lloyd ("**Lloyd**") filed an application to be retained as counsel for the Debtor, which was granted on March 15, 2021.  On February 12, 2021, the Debtor filed an application to retain Julie Boynton and the Law Office of Julie Boynton, P.C. (collectively, "**Boynton**") as special counsel to handle certain litigation matters, which was granted on February 22, 2021.  On April 1, 2021, Adelman & Gettleman, Ltd. ("**A&G**") filed its application to be retained as counsel to the Committee which was granted on April 26, 2021.  On September 1, 2021, the Debtor filed an application to retain Christopher V. Langone of Langone Law LLC ("**Langone**") as special counsel to handle certain litigation matters, which was granted on September 8, 2021.  On October 13, 2021, the Debtor filed an additional application to retain Boynton as special counsel to assist in certain appellate matters, which was granted on October 25, 2021.  On April 4, 2022, the Debtor filed an additional application to employ Langone as special counsel to assist in certain matters, including an objection and appeal, related to Wintrust, which was granted on April 11, 2022.

On June 29, 2022, David Lloyd, the then-Debtor's counsel, filed a motion to withdraw as counsel for the Debtor.  On that same date, William J. Factor filed a motion to be employed as counsel to the Debtor, to which the United States Trustee objected on July 1, 2020. On July 19, 2022, Mr. Factor withdrew his application and the next day, on July 20, 2022, Freeborn & Peters, LLP ("**Freeborn**") and Shelly A. DeRousse filed an application to be retained as counsel for the Debtor, which was granted on August 3, 2022, retroactive to July 19, 2022.

### The Debtor's Chapter 11 Plan History

On May 6, 2021, through his former counsel, the Debtor filed a Chapter 11 plan proposing to pay non-insider unsecured creditors 100% on their claims, and later filed amended plans on August 13, 2021, November 22, 2021, June 14, 2022, and December 16, 2022. Each of these plans proposed to pay unsecured creditors 100% on their claims, however none of them proceeded to confirmation.

On January 16, 2023, through Freeborn, Debtor filed the Plan, which also proposes to pay non-insider unsecured creditors 100% of their claims and will be proceeding to a confirmation hearing for approval by the Court. The Plan also provides for the subordination of the claim of Matthew Spiegel to payment of all other allowed claims, a treatment to which Matthew Speigel has agreed.  The Plan and this Disclosure Statement contain amendments in response to issues raised by the United States' Trustee with respect to the plan filed on December 16, 2022 and related disclosure statement, in an effort to partially or fully resolve such issues.

### Committee Discovery

Just nineteen days after A&G file its retention application, and before A&G's retention was even approved, the Committee filed a motion to conduct Rule 2004 discovery of the Debtor; the Debtor's son, Matthew Spiegel; Greenleaf; and two banks.

The Committee, the Debtor, Matthew Spiegel, and third parties spent the next year and a half engaging in various discovery and discovery-related motion practice, including a motion to stay discovery, motions to compel discovery, and a motion for discovery sanctions.

### Professional Fee Applications

On October 7, 2021, Lloyd filed his first interim fee application which sought allowance and payment of $62,920.00 in fees and expenses for the period of March 16, 2019 – September 30, 2021. The Court allowed the requested fees.  On February 24, 2022, Lloyd filed his second interim fee application which sought allowance and payment of $53,280.00 in fees and expenses for the period of October 1, 2021 – January 31, 2021.  The Court allowed $51,996.00 of such fees.  On September 21, 2022, Lloyd filed his third fee application which sought allowance and payment of $47,680.00 in fees and $551.18 in expenses.  On November 21, 2022, the Court entered an order allowing the fees sought in the third fee application, which includes an agreement between the Debtor and Lloyd preserving any claims the Debtor may have against Lloyd.  The Debtor has paid all of Lloyd's allowed fees.

On September 3, 2021, A&G filed its first interim fee application which sought allowance and payment of $148,146.30 in fees and $1,307.47 in expenses for the four-month period of April 1, 2021-July 31, 2021.  The Court allowed $137,704.70 in fees and $1,307.47 in expenses.  On February 28, 2022, A&G filed its second interim fee application which sought allowance and payment of $167,272.00 in fees and $626.32 in expenses for the four-month period of August 1, 2021-December 31, 2021. The Court allowed $153,035.65 in fees and $626.32 in expenses.  On October 3, 2022, A&G filed its third fee application seeking allowance and payment of $213,680.50 in fees and $1,246.58 in expenses for the seven-month period of January 1, 2022-July 31, 2022.  The Debtor, Greenleaf, and Matthew Spiegel have objected to A&G's third fee application, which is pending as of the filing of this Disclosure Statement.  The Debtor has paid all of A&G's allowed fees as of the filing of this Disclosure Statement.

### *Post-Petition Bankruptcy Litigation and Objections*

On April 22, 2021, the Debtor is a plaintiff in an adversary proceeding as case number 21-A-00065 against Wintrust Bank, N.A. ("**Wintrust Bank**"), seeking to stay Wintrust Bank from foreclosing on its interest in the certificates of deposit, totaling $475,000 in value, pledged by the Debtor's son, Matthew Spiegel, to secured the letter of credit issued by Wintrust Bank for the benefit of the Debtor.  The Court issued a temporary restraining order against Wintrust Bank on April 27, 2021, and on May 11, 2021, the Court issued an order temporarily enjoining Wintrust Bank from liquidating the certificates of deposit in which Matthew Spiegel has an interest.  The Court denied the Debtor's motion for preliminary injunction to further stay liquidation of the certificates of deposits by order entered September 13, 2021, and on September 24, 2021, the Debtor filed a notice of appeal to the United States District Court for the Northern District of Illinois (the "**District Court**"), commencing Case No. 21-cv-05087. Thereafter, Wintrust liquidated the certificates of deposit.  In the District Court, the Debtor filed a motion to voluntarily dismiss the appeal and on November 9, 2022, the District Court entered an order granting the motion to dismiss the appeal.  As of the date of the filing of this Disclosure Statement, the adversary proceeding is pending, but will likely be dismissed.

On August 15, 2019, Citizens Insurance Company of Illinois, Inc. ("**Citizens**") brought a lawsuit against the Debtor and other parties seeking a declaration as to insurance coverage of sanctions claims held by creditors of the Debtor and paid pursuant to a letter of credit by Wintrust Bank.  The state court case was filed with the Circuit Court of Cook County as Case No. 19 CH 04870; the Debtor filed a counter-claim on December 10, 2020. The Debtor filed a notice of removal to the United States Bankruptcy Court for the Northern District of Illinois on April 6, 2021, commencing Adversary Proceeding No. 21 A 00056. On May 5, 2021, Citizens filed a motion in this bankruptcy case to seek that the Court abstain, or to remand to the state court. On June 29, 2021, the Court entered an order abstaining from the case and dismissing the adversary proceeding.  The case remains pending in the Circuit Court of Cook County.

On April 30, 2021, thee Debtor filed an adversary proceeding case number 21 A 00074 against the Condominium Association, James Waite, Marie Waite, William McClintic, Corinne McClintic, Valerie Hall, Michael C. Kim, and DuaneMorris LLP, seeking to recover duplicate payments received by those defendants from both Citizens, under a policy insuring the Debtor, and Wintrust Bank, pursuant to a letter of credit. On August 9, 2021, the Court entered an order denying motions to dismiss filed by the remaining defendants and ordered the defendants to answer the complaint. Defendants have filed answers and affirmative defenses to the complaint. On November 22, 2021, the defendants in the adversary proceeding filed a motion to stay the adversary proceeding pending resolution of any and all appeals of the order of the Circuit Court of Cook County dated October 21, 2021 granting sanctions in favor of the defendants. On January 25, 2022, the Bankruptcy Court entered an order staying the adversary proceeding until further order of the Court.

The Debtor has filed objections to claims of various creditors, as follows:

- On July 23, 2021, the Debtor filed objections to Claim #5 of Valerie Hall; Claim #6 of Duane Morris LLP; Claim #7 of Marie Francoise Waite; Claim #9 of the Condominium Association; Claim #10 of James Waite; Claim #11 of William McClintic; Claim #12 of Corinne McClintic; and Claim #13 of Michael C. Kim. These claims are based on requests for additional sanctions in Case No. 15 CH 18825 in the Circuit Court of Cook County, detailed in the section "Pending Litigation in Other Forums" below. On September 13, 2021, these creditors filed a motion for the Court to abstain from the claim objections in favor of the Circuit Court of Cook County. On October 25, 2021, the Court entered an order abstaining from these claim objections, and the litigation in the Circuit Court of Cook County will determine the amount and validity of these claims.

- On July 23, 2021, the Debtor filed an objection to Claim #8 of the Condominium Association. On October 12, 2021, the creditor filed a response to the Debtor's objection along with an amended proof of claim that contained documentation missing from the original proof of claim. On October 25, 2021, the Court included this objection in its abstention order affecting the claims referred to in the previous paragraph, although the creditor had not sought abstention. The Debtor has not determined whether to seek vacatur of the order of abstention, in light of the amount of the claim and the additional documentation provided in the amended claim.

- On September 8, 2021, the Debtor filed an objection to Claim #2 of Wintrust Bank. The claim arises from the creditor's payment under a letter of credit that served as an appellate bond in an appeal of a decision awarding sanctions in favor of creditors in the case of *1618 Sheridan Rd. Condo. Assoc. v. Marshall Spiegel et al*., referenced above. The grounds for the objection are that the Debtor alleges that Wintrust Bank paid on the letter of credit without complying with the terms of the letter of credit, specifically that it paid without presentment of a certified copy of the appellate court's order, as required by the letter of credit. At the time of the filing of this Disclosure Statement, that objection is pending.

### *Other Litigation*

*1618 Sheridan Rd. Condo. Assoc*. v. *Marshall Spiegel et al.* Three cases were consolidated in the Circuit Court of Cook County Illinois (15 CH 18825, 15 L 10817 & 16 L 3564). One case was brought against the Debtor by the Condominium Association alleging he violated his duties as a board

member. The other two cases were brought by the Debtor against the Condominium Association and other persons alleging violation of the condominium declarations, breaches of fiduciary duty, declaratory judgments, breaches of contract, and intentional interference and alike. All the cases relate to acts by either the Condominium Association board members, residents or owners, and their agents. The Debtor filed a notice of appeal of an award of over $1 million in sanctions against him in April, 2019, and the Illinois Appellate Court entered an order affirming the award in December, 2020, but on August 9, 2021, the Appellate Court vacated its order and on August 12, 2021, the Appellate Court dismissed the appeal for lack of jurisdiction. The Appellate Court held that, because the claimants had filed additional sanctions claims, the sanctions order was not a final and appealable order, as it did not resolve all issues between the parties. On April 30, 2021, the claimants obtained an order from the Bankruptcy Court modifying the automatic stay to allow them to pursue their additional sanctions claims. On September 16, 2022, the Circuit Court entered the following additional sanction awards against the Debtor:  1) $109,840.70 for the Condominium Association, McClintics, and Waites, 2) $38,242.91 for Michael Kim, and 3) $26,871.00 for Valerie Hall.  The Debtor intends to defend against these additional sanctions claims and, upon a final order disposing of all claims, has appealed both the awarding of sanctions totaling nearly $1.1 million dollars (the "**Sanctions Award**") as well as dismissal of his complaints. At the time of the filing of this Disclosure Statement, the litigation is subject to a pending appeal.

*Village of Wilmette v. Marshall Spiegel et al.* (Circuit Court of Cook County Illinois, 15 CH 05403). The Village of Wilmette sought nearly $283,000 dollars for an ordinance violation. Spiegel countersued for violation of his constitutional rights. Summary judgment was awarded for Spiegel on his due process violation. Wilmette's case was dismissed. Both Spiegel and Wilmette have appealed the decisions to the Appellate Court of Illinois, First District (Case No. 1-19-2608, No. 1-19-2610). Spiegel's was subsequently awarded $15,000 dollars in attorney's fees subject to the civil rights statute. This was also appealed. The appellate court directed that all of the appeals would be consolidated for an expedited decision. On December 9, 2022, the appellate court reversed the trial court's award of summary judgment in favor of the Debtor as well as the award of attorneys' fees.  A declarator action (Case No. 19 CH 13100) is still pending in the Circuit Court of Cook County.  This case was filed to preserve the Debtor's declaratory judgment claim in the prior litigation that was voluntarily dismissed by the Debtor.  The Circuit Court continued this case pending resolution of the appeal.

*Citizens Ins. Co. v. Marshall Spiegel et al.* The case is currently pending in the Circuit Court of Cook County as case number 2019 CH 04870. Citizens filed suit against Spiegel alleging that it has no duty to defend or indemnify Spiegel in *1618 Sheridan Rd. Condo. Assoc.* v. *Marshall Spiegel et al.*(15 CH 18825, 15 L 10817 & 16 L 3564). Spiegel counterclaimed against Citizens and joined others as necessary parties alleging that Citizens has such a duty and violated it in numerous ways including refusing to fully pay for his attorney's fees. The Debtor has a counter-claim for breach of contract against Citizens.  Debtor intends to seek to re-plead any counterclaims and affirmative defenses that were stricken without prejudice.  Citizen's motion for summary judgment is pending.

*Marshall Spiegel v. 1618 Sheridan Rd. Condo. Assoc.* The case is an appeal from the Circuit Court of Cook County Illinois (Case No. 98 M1 40723). Spiegel initially brought suit to enforce a settlement agreement entered into between himself and the Association. The Circuit Court of Cook County granted the Association's counterpetition to enforce a different part of the settlement agreement and required Spiegel to take down certain documents and displays in his window. Spiegel appealed. The appellate court denied the appeal.  On March 16, 2022, the Appellate Court of Illinois, First Judicial District (Case No. 1-20-1142) denied the Debtor's appeal and then denied

reconsideration on April 12, 2022. On September 28, 2022, the Illinois Supreme Court denied the Debtor's petition for leave to appeal.

*Marshall Spiegel v. Illinois Human Rights Com'n et al.* The Debtor appealed a decision by the Illinois Human Rights Commission, denying his charge of disability discrimination for the Association's refusal to allow Spiegel to keep a medically prescribed chair at his pool. The appellate court denied the appeal, and on October 27, 2021, denied a petition for rehearing.

*Village of Wilmette v. 1618 Sheridan Rd. Condo Assoc.* The case originally started out as an ordinance violation filed by the Village of Wilmette against the Association for failing to fix the water leaking into Spiegel's unit. Spiegel appealed the Circuit Court of Cook County's denial of intervention in the case. The case was formerly on appeal in the Appellate Court of Illinois, First Judicial District (No. 1-19-0264). The Appellate court upheld the trial court's denial and denied reconsideration.

*Other litigation, either completed or contemplated.* The Debtor holds judgments against several parties: Engagetel, in the amount of $268,615.50; Scott and Nancie Dempsey, in the amount of $2,760.00; Travis Peterson, in the amount of $19,171.50, and "Reynolds," in the amount of $25,000.00. The Debtor has not recovered any funds on these judgments in recent years and the collectability of these claims is questionable. The Debtor is not relying on collection on any of these judgments to fund the Plan. In addition, the Debtor may have claims against other parties; for example, the Debtor may have defamation claims against one or more of the parties to the litigation consolidated under the title *1618 Sheridan Condominium Association v. Marshall Spiegel et al.*, Case Nos. 15 CH 18825, 15 L 10817, and 16 L 3564. The Debtor does not intend to waive any claims against any party by the inclusion or omission of any potential claim.

### Motion to Convert

On November 8, 2022, the Committee filed a motion to convert the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, citing various bases for "cause" to convert the case, including that the Debtor has omitted the estate's most valuable asset from his schedules; the Debtor has omitted the estate's single largest creditor from his schedules; the Debtor has failed to confirm a plan in a reasonable time; the Debtor has attempted to confirm four plans which function only as appeal bonds; the Debtor has refused to prosecute valuable estate claims; the Debtor has purposefully diminished the estate; the Debtor has used property of the estate outside the ordinary course of business without authority; the Debtor has not filed timely or accurate monthly reports; the Debtor has used his son and company as pawns in his efforts to hinder, delay, and defraud his creditors; the Debtor has objected to nearly all claims without a basis; the Debtor has refused to compromise with his creditors in any way; the Debtor has resisted the Committee's discovery efforts; the Debtor has continued to litigate in other fora; the Debtor has refused to pay the expenses of the estate as they are allowed; and the Debtor has otherwise breached his fiduciary duties to the estate and the creditors. The Debtor disputes the Committee's allegations asserted in the motion to convert or that cause to convert exists and intends to file an objection to the motion. The motion to convert was pending at the time of filing this Disclosure Statement and is scheduled for evidentiary hearing at the same time as the hearing on confirmation of the Plan.

### Motion to Extend Deadline to File Estate Claims

On November 23, 2022, the Committee filed a motion for an order tolling the statute of limitations imposed by section 546(a)(1)(A) of the Bankruptcy Code, seeking to extend the two-year

period the Debtor's estate has to assert certain claims against third parties for avoidance and recovery of certain transfers, among other claims. The motion for an order tolling the statute of limitations was pending at the time of filing this Disclosure Statement.

### *Claims Against Attorneys and Tolling Agreements*

The Debtor may have claims against certain attorneys in connection with their representation of him in the state court litigation leading to the Sanctions Award against him and in his bankruptcy case, including John Xydakis, Adrian Vuckavich, and David Lloyd. With respect to Mr. Xydakis and Mr. Vuckavich, the Debtor has entered tolling agreements, tolling the statute of limitations to file claims through April 30, 2023 and May 4, 2023, respectively. With respect to Mr. Lloyd, any potential claims were preserved by agreement between the Debtor and Mr. Lloyd, which is indicated in the agreed order allowing Mr. Lloyd's third fee application.

E.      **Projected Recovery of Avoidable Transfers**

The only potentially significant preferential or fraudulent transfer claims that exists are claims against Greenleaf or Matthew Spiegel related to the transfer of the Greenleaf Apartment Building and other assets to Greenleaf or for the benefit of Matthew Spiegel, although since the Debtor was solvent at the time of such transfers it is unlikely that such claims are viable. **The approximate value of the Greenleaf Apartment Building is $4 million.** However, in lieu of pursuing expensive litigation and investigation of such potential claims which would include expert insolvency analysis, Greenleaf is willing to fund the Plan by making distributions to the Debtor in an amount sufficient to pay all claims in full, which would moot any potential fraudulent transfer claims and provide recovery to the creditors in the most efficient way possible. Additionally, Matthew Spiegel has agreed to voluntarily subordinate his claim against the Debtor in the amount of $475,000 to the payment of all allowed claims. The Debtor does not intend to pursue any other preference, fraudulent conveyance, or other avoidance actions.

F.      **Claims Objections**

The Court set a deadline of May 27, 2021 to file a proof of claim with the Bankruptcy Court for all creditors other than government creditors and June 15, 2021 for government creditors. If you did not file a proof of claim on or before that deadline, the Court has not excused any late filed claim, and your claim was not scheduled by the Debtor as undisputed, liquidated and non-contingent, then your claim will not receive payout under the Plan. Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. If the Debtor objects to your claim, then the Court will determine the allowance, validity and amount of your claim. Therefore, you may not be entitled to a distribution if an objection to your claim is later sustained. The procedures for resolving a disputed claim will be set by order of the Court if the Debtor files an objection.

The Plan sets a bar date of 30 days after the Effective Date of the Plan (the "**Unknown Claim Bar Date**") to supplement or file a proof of claim in accordance with Federal Rule of Bankruptcy Procedure 3001 for creditors who have Unknown Claims, defined as (a) a claim that the Debtor listed in his schedules filed with the Bankruptcy Court as unknown in amount for which the creditor did not file a proof of claim or (b) any claim for which a creditor filed a proof of claim in an unknown amount. Any Unknown Claim for which the proof of claim is not supplemented or filed in an amount certain on or before the Unknown Claim Bar Date will not receive a payment under the Plan. Any claim which

was an Unknown Claim that becomes an Allowed Claim, in accordance with the procedure in the Plan, will also be paid 100% of the Allowed amount of the Claim.

### G.    Current and Historical Financial Conditions

The identity and estimated value of the estate's assets are listed in **Exhibit B** and the summary of the Debtor's operations during the Chapter 11 case is listed in **Exhibit F**. The Debtor's tax returns for the year 2021 are included in **Exhibit G**. The Debtor plans to receive distributions from Greenleaf as soon as reasonably possible after confirmation of the Plan, but no later than one week after the Effective Date of the Plan. The Effective Date of the Plan will occur fourteen (14) days after the Bankruptcy Court's order confirming the Plan becomes a final order.

### III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS

### A.    What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.    Administrative Expenses and U.S. Trustee Fees

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with what is required by the Code. As such, the Plan Proponent has *not* placed the following claims in any voting class:

1.    *Administrative Expenses*

Each holder of an Administrative Expense Claim allowed under § 503 of the Code will be paid in full on the Disbursement Date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. The "Disbursement Date" will be the first such date occurring as soon as practicable following the Effective Date, but not later than one week after the later of the Effective Date of the Plan or the date on which the amount of a particular claim has been finally allowed by the Bankruptcy Court by final order.

The funds to pay the Administrative Expense Claims will come from a voluntary distribution to the Debtor from Greenleaf which will be place in an account (the "**Disbursement Account**") controlled by a disbursement agent Robert Handler (the "**Disbursement Agent**") who will pay the Administrative Expense Claims, when due. The deadline for filing a request for allowance of Administrative Expense Claims which arose prior to the Confirmation Date is thirty (30) days after the Confirmation Date.   "Confirmation Date" is the date upon which the confirmation order is entered in accordance with the provisions of the Bankruptcy Code; provided, however, that if the confirmation order or consummation of this Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the final order vacating such stay or the date on which such stay expires or is no longer in effect. Any Administrative Expense Claims which are not timely filed by the Administrative Expense Claim Bar Date will be barred.

2.      *U.S. Trustee Fees*

Any fees owed to the Office of the U.S. Trustee will be paid in full on the Effective Date of the Plan or as soon thereafter as practicable.

C.      **Classes of Claims**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1. Governmental Unit Claims. | Unimpaired | The City of Chicago Department of Finance is the only creditor to assert a Governmental Unit Claim in the amount of $1,525.  Class 1 will receive payment of 100% of its allowed Claim. |
| Class 2. Priority Claims. | Unimpaired | No Creditors have asserted a Priority Claim and the Debtors are not aware of any Claims in Class 2.  To the extent applicable, Class 2 will receive payment of 100% of its allowed Claim(s). |
| Class 3. U.S. Bank Claim. | Unimpaired | U.S. Bank filed a Claim on January 1, 2021 in the amount of $513,631.27, secured by the Condominium.  The Debtor has been making payments due under the U.S. Bank Loan Documents during this case in the ordinary course of business and will continue to make payments in accordance with the U.S. Bank Loan Documents after the Effective Date.  The principal amount of any payments the Debtor has made to U.S. Bank prior to the Effective Date will be credited toward the principal amount due to U.S. Bank. U.S. Bank's mortgage and security interest shall continue in the Condominium shall be unaltered by this Plan.  As of the date of this Disclosure Statement, the amount owed to U.S. Bank is approximately $460,000.<br><br>Class 3 will receive 100% of its allowed secured claim in accordance with the terms of the U.S. Bank Loan Documents. |
| Class 4.  Wintrust Bank Claim. | Unimpaired | Wintrust Bank filed a Claim on February 10, 2021 in the amount of $1,243,523.07 ($1,225,000 principal and $18,523.07 interest) |

| | | |
|---|---|---|
| | | based on a letter of credit which was issued on or about May 22, 2019, as bond for an appeal.[3] The letter of credit was secured by four CDs: (a) Account D642 owned by the Debtor in the amount of $250,000, (b) Account 2620 in the amount of $500,000 owned by the Debtor and Matthew Spiegel jointly, (c) Account 8763 in the amount of $250,00 owned by Matthew Spiegel, and (d) Account 4178 in the amount of $225,000 owned Matthew Spiegel.  Wintrust paid $1,225,000 to the beneficiaries of the letter of credit on or about December 3, 2021. |
| | | Wintrust Bank drew on its collateral CDs in the amount of $1,225,000 and has been paid $1,225,000.  The Debtor will object to the satisfied portions of the Wintrust Bank Claim by separate motion requesting that it be deemed moot or disallowed as satisfied prior to the Confirmation Date. |
| | | The Debtor will pay the balance of Wintrust Bank's Allowed Claim from the Disbursement Account on the Disbursement Date. |
| Class 5. Litigation Claims. | Unimpaired | The estimated unpaid Litigation Claims total $185,905.76. |
| | | The Litigation Claims relate to litigation which is pending between the Debtor and the Holders of the Litigation Claims, in the Circuit Court of Cook County, Illinois and Illinois Appellate Courts.  They are currently subject to a pending appeal.  The Debtor objected to all of the Litigation Claims and the Bankruptcy Court has abstained from adjudicating the Litigation Claims. |
| | | The Litigation Claims have been, in large part, satisfied by the payment by Wintrust Bank to the Holders of the Litigation Claims from the draw on the letter of credit from Wintrust Bank. The Debtor will object to the satisfied portions of the Litigation Claims by separate motion requesting that they be deemed moot or |

---

3 In addition to the claim asserted in its proof of claim, Wintrust has informed the Debtor's counsel that it intends to also pursue a claim under section 506(b) of the Bankruptcy Code for recovery of its legal expenses, but no such claim has been filed with the Court at the time of the filing of this Disclosure Statement.  The Debtor disputes that Wintrust is entitled to any claims under section 506(b) of the Bankruptcy Code.

| | | |
|---|---|---|
| | | disallowed as satisfied prior to the Confirmation Date. The remaining amounts the Holders of the Litigation Claims have asserted in Illinois state court which have not been satisfied are $26,871 claimed by Valerie Hall, $120,791.85 claimed by the Condominium Association, and $38,242.91 claimed by Michael Kim (collectively, the "**Unsatisfied Litigation Claims**").<br><br>Class 5 Creditors will receive payment of 100% of the Allowed Litigation Claims from the Disbursement Account on the Disbursement Date. |
| Class 6. General Unsecured Claims. | Unimpaired | The Claims of General Unsecured Creditors total $107,837.36.<br><br>Class 6 Creditors will receive payment of 100% of the allowed General Unsecured Claims from the Disbursement Account on the Disbursement Date. |
| Class 7. Matthew Spiegel Claim. | Impaired | The Claim of Matthew Spiegel totals $475,000.00 and is unsecured.<br><br>Matthew Spiegel has agreed to the Class 7 Claim treatment. Class 7 will be subordinated to the payment of the Allowed Claims of all other classes. Class 7 will not be paid from the Disbursement Account and may be paid from cash or any other assets of the reorganized Debtor commencing only after the Debtor has made all payments under the Plan to Classes 1 through 6. The Class 7 claim will be paid in equal annual installments of $47,500 over ten years, beginning on the later of year after all allowed claims in Classes 1 through 6 have been paid full or one year after the date the Disbursement Account is funded. |

D.     **Means of Implementing the Plan**

Payments and disbursements under the Plan will be funded by a voluntary distribution to the Debtor from Greenleaf, of which the Debtor's son Matthew Spiegel is the 99.9% member and the Debtor is the 0.1% member. Greenleaf shall make a distribution on or before the Disbursement Date to the Debtor in an amount not less than the estimated amount of outstanding unpaid unsecured Claims of $313,791.19 (excluding the subordinated claim of Matthew Spiegel), plus $30,000.00 for the costs

and fees of the Disbursement Agent, plus the amount of any estimated, pending, or Allowed unpaid Administrative Claims. With the exception of the funds to be paid to Matthew Spiegel, the funds distributed to the Debtor by Greenleaf pursuant to the Plan will be held in a segregated Disbursement Account to which the Disbursement Agent will have access. The funds to be distributed to Matthew Spiegel under the Plan will be paid from distributions the Debtor receives from Greenleaf, only after all funds in the Disbursement Account have been disbursed and all other allowed claims have been paid. Matthew Spiegel has agreed to the terms of the Plan, including the subordination and repayment schedule of his Claim.

To the extent that any of the non-insider unsecured Claims are disallowed, the Disbursement Agent will refund the Debtor from the Disbursement Account the amount equal to the disallowed portion of such Claim. To the extent that the Allowed non-insider unsecured Claims exceed in the aggregate $313,791.19, Greenleaf will make an additional distribution to the Debtor in such excess amount which the Debtor will deposit into the Disbursement Account. To the extent that the costs and fees of the Disbursement Agent exceed $30,000.00, Greenleaf will make an additional distribution to the Debtor to fund such additional costs and fees which the Debtor will deposit into the Disbursement Account. After all disbursements have been made pursuant to this Plan, the Disbursement Agent will refund to the Debtor any excess funds in the Disbursement Account.

Upon Confirmation, the Debtor shall be vested with his assets, subject only to the terms and conditions of this Plan. The Debtor shall be entitled to continue to manage his business and financial affairs without further Order of this Court as set forth in the Plan. If the Debtor is successful in his appeal of the sanctions claims which were paid by the liquidation of Wintrust's $1,250,000 letter of credit, the Debtor may be entitled to recovery of some or all of the funds paid to the sanctions creditors.

Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its lien or security interest in any assets of the Debtor or otherwise enforcing claims against the Debtor and his assets except in a manner provided for under the terms and conditions of this Plan. Such injunction shall not affect the right of any holder of an Allowed Secured Claim to foreclose upon any security interest provided in the Plan in the event of any post-Confirmation default under this Plan as permitted by the Plan. This injunction shall remain in full force and effect to prevent said actions as long the Court does not find that the Debtor is not in compliance with the Plan until all disbursements have been made in accordance with the terms and conditions of the Plan.

Robert Handler shall be the Disbursement Agent for the payments required under the Plan. The Disbursement Agent will be paid by the Debtor an hourly rate for his services from distributions to the Debtor from Greenleaf. In the event that Mr. Handler becomes unwilling or unable to serve as Disbursement Agent, the Debtor will retain another person who is a member of the panel of trustees in cases filed under Subchapter V of Chapter 11 in the Northern District of Illinois to serve as Disbursement Agent under this Plan.

The Debtor will have the right to make any disbursements to Creditors earlier than required by the Plan, without penalty.

The Plan is self-executing. Except as expressly set forth in the Plan, the Debtor shall not be required to execute any newly created documents to evidence the Claims, liens or terms of repayment to the holders of any Allowed Claims. The terms of the Plan will exclusively govern payments to

creditors and any other rights of creditors as against the Debtor and his property. Furthermore, upon the completion of the payments required under the Plan to the Holders of Allowed Claims, such Claims, and any liens that may support such Claims, shall be deemed released and discharged.

The Bankruptcy Court shall retain jurisdiction over the Plan and to determine the allowance of Claims against the Debtor pursuant to section 502 of the Code, including but not limited to the allowance or disallowance of any claim which has not been Allowed or disallowed as of the date of the Confirmation Order and fixing of allowance of compensation and other Administrative Expense Claims in accordance with section 503 of the Code.

E.    **Risk Factors**

The only significant risk factor with respect to the Debtor's ability to make the payments contemplated by the Plan is the inability of Greenleaf to fund the Disbursement Account on time and in full. Greenleaf has $1,000,000 in cash reserved for funding the Disbursement Account at this time of this Disclosure Statement, plus future income, which is sufficient funds to make the payments required under the Plan, so this risk is low.

The Committee has asserted that the Plan was not proposed in good faith and the Debtor expects that the Committee will object to the Plan on that basis. The Debtor contests any argument that the Plan is not proposed in good faith. If the Plan is not confirmed, there is a risk that the Court may dismiss the bankruptcy case or convert the case to Chapter 7.

Additionally, the Debtor has asserted an argument on appeal of the Sanctions Award that the Debtor should not have been held liable for the portion of the Sanctions Award based on actions and decisions made by his attorney based on both federal and state law. The Debtor believes that a likelihood exists that some or all of the Sanctions Award will be reversed against him, which would result in a reduction of claims against his estate and a right to receive a refund of the funds that were paid to the recipients of the Sanctions Award.

F.    **Executory Contracts and Unexpired Leases**

To the extent that they are executory contracts, the Debtor assumes his pre-petition contracts with attorneys Julie A. Boyton and Christopher A. Langone to provide legal services and rejects his pre-petition contract with attorney John S. Xydakis to provide legal services.

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases, if any, not expressly assumed under this section, on or before the date of the confirmation order. A proof of a claim arising from the rejection of an executory contract or unexpired lease under the Plan must be filed no later than ten (10) days after the date of the confirmation order.

The Debtor may file a notice of assumption of executory contracts and unexpired leases prior to the confirmation hearing on this Plan, as an Exhibit to this Plan, which will be incorporated into this section, and served upon the counter-party to such executory contract or unexpired lease, the United States Trustee, and all creditors of the estate. Any executory contract or unexpired lease contained in such notice shall be deemed assumed under this section, unless a party in interest objects to such assumption within fourteen days (14) of such notice and the Bankruptcy Court sustains such objection.

G.    **Tax Consequences of Plan**

22

*Creditors Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a Chapter 7 liquidation case; and the Plan must be feasible.  These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

The creditors and parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor has a right to vote for or against the Plan only if that creditor is not an insider of the Debtor and has a claim that is both (1) allowed or allowed for voting purposes and (2) impaired.  Since all claims will be paid in full under the Plan, there are no impaired claims.  Therefore, none of the classes of creditors have the right to vote to accept or reject the Plan.

#### 1.    *What Is an Allowed Claim?*

Only a creditor or equity interest holder with an allowed claim has the right to receive payment under the Plan.  Generally, a claim is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim.

#### 2.    *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

#### 3.    *Who is **Not** Entitled to Vote?*

The holders of the following types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;

- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

- holders of claims in classes that do not receive or retain any value under the Plan; and

- holders of administrative expense claims.

Section 1129(a)(10) of the Bankruptcy Code also excludes the vote of any insider who holds an impaired claim from accepting a plan.

***Since all claims in this case fall into one or more of the above categories, no creditors are entitled to vote on the Plan. Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

*NOTE:* ***The Official Committee of Unsecured Creditors and the United States Trustee disagree that the creditors in Class 6 are unimpaired under the Plan and not entitled to vote for or against the Plan.***

### B.   Votes Necessary to Confirm the Plan

***You should consult your own attorney regarding the Debtor's determination that your claim is unimpaired.***

### C.   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors will receive at least as much under the Plan as such claim would receive in a Chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit D**. Since the Plan proposes to pay 100% of claims as soon as practicable after the later of confirmation or allowance, the Creditors will receive at least as much as they would under a Chapter 7 liquidation.

### D.   Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

#### 1.   *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid under the Plan because Greenleaf has agreed to make distributions to the Debtor in an amount sufficient to fund the Plan. The Debtor's projected cash flow for the first year following confirmation of the Plan is included as **Exhibit C** to this Disclosure Statement.

#### 2.   *Ability to Make Future Plan Payments And Operate Without Further*

24

*Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.  Since the Disbursement Account will be funded as soon as practicable after confirmation, future payments to creditors are not necessary.  Also, since the creditors will be paid in full, and the Debtor does not expect that further reorganization will be necessary.

## V.   EFFECT OF CONFIRMATION OF PLAN

### A.    DISCHARGE OF DEBTOR

Discharge. On completion of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code.  However, the Debtor shall not be discharged from any debt imposed by the Plan or if the Court denies the discharge under § 727 of the Bankruptcy Code.  Subject to the limitations herein, after the effective date of the Plan, your claims against the Debtor will be limited to the debts imposed by the Plan.

### B.    STAY OF ACTIONS AGAINST THE DEBTOR AND REORGANIZED DEBTOR

Except as specifically provided herein, from the Effective Date through the completion of this Plan no earlier than five (5) years after the Effective Date, each Person (as defined in the Bankruptcy Code) shall be stayed and enjoined from taking any action against (a) the Debtor and (b) the Reorganized Debtor on account of or related to any and all claims, obligations, guarantees, suits, judgments, damages, rights, causes of action or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the claim of such person or entity against the Debtor or any other matter in any way related to, or arising from, the Debtor or the operation of the Debtor, the administration of the Bankruptcy Case, or the negotiation, preparation, formulation, solicitation, dissemination, implementation, confirmation and consummation of the Plan (the "**Stayed Claims**") and the Confirmation Order shall enjoin the commencement or prosecution by any Person, whether directly or derivatively, of the Stayed Claims; provided that the Debtor is in compliance with the Plan; further provided that nothing in this paragraph shall prevent an objection to discharge under § 727 of the Bankruptcy Code; further provided that this paragraph shall not stay actions to liquidate pre-petition claims of creditors scheduled or properly asserted in the Bankruptcy Case from which the Bankruptcy Court abstained; further provided that this paragraph shall not stay the action for declaratory judgment in *Citizens Inc. Co. v. Marshall Spiegel et al*, 2019 CH 04870, pending in Circuit Court of Cook County, Illinois.

### C.    RELEASES OF PROFESSIONALS

Subject to Section 1125(e) of the Bankruptcy Code, each of the respective employees, agents, representatives and attorneys (including the Freeborn and Peters LLP as Debtor's counsel) of the Debtor and Reorganized Debtor, and each of their heirs, executors, administrators, successors and assigns, shall neither have nor incur any liability to any person for any act taken or omitted to be taken in connection with or related to the administration of the Bankruptcy Case, the solicitation of votes on, or the negotiation, preparation, formulation, solicitation, dissemination, implementation, confirmation

or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken in connection with this Bankruptcy Case or the Plan; provided that this paragraph shall not apply to any claims the Debtor has against David Lloyd or John Xydakis.

D.    **INJUNCTION**

Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its lien or security interest in any assets of the Debtor or otherwise enforcing claims against the Debtor and his assets except in a manner provided for under the terms and conditions of this Plan. Such injunction shall not affect the right of any holder of an Allowed Secured Claim to foreclose upon any security interest provided in the Plan in the event of any post-Confirmation default under this Plan as permitted by the Plan.  This injunction shall remain in full force and effect to prevent said actions as long the Court does not find that the Debtor is not in compliance with the Plan until all disbursements have been made in accordance with the terms and conditions of the Plan.E.    **MODIFICATION OF PLAN**

The Debtor may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new Disclosure Statement and/or re-voting on the Plan if such modification has a material impact on the class it affects and such class has not agreed to such modification. The Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

F.    **FINAL DECREE**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.  The case shall be deemed fully administered if the Plan is substantially consummated by the Reorganized Debtor commencing distributions to any Class under the Plan.

**[Intentionally left blank]**

Dated:  January 16, 2023                    Respectfully submitted,

By: /s/ Marshall Spiegel
The Plan Proponent

By: /s/ Shelly A. DeRousse
      Attorney for the Plan Proponent

      Shelly A. DeRousse, Esq.
      FREEBORN & PETERS LLP
      311 South Wacker Drive
      Suite 3000
      Chicago, Illinois 60606
      Telephone: (312) 360-6000
      Facsimile: (312) 360-6520